IN THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,
1401 New York Ave. NW, Washington, DC 20005
Plaintiff,

v.

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY
1600 Pennsylvania Ave NW, Washington DC 20500

GENERAL SERVICES ADMINISTRATION
1800 F St. NW, Washington, DC 20405

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Ave NW, Washington DC 20500

OFFICE OF THE VICE PRESIDENT
1600 Pennsylvania Ave NW, Washington DC 20500

OFFICE OF ADMINISTRATION
1600 Pennsylvania Ave NW, Washington DC 20500

MICHAEL R. PENCE, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY
1600 Pennsylvania Ave NW, Washington DC 20500

KRIS W. KOBACH, IN HIS OFFICIAL CAPACITY AS VICE CHAIR OF THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY
1600 Pennsylvania Ave NW, Washington DC 20500

ANDREW KOSSACK, IN HIS OFFICIAL CAPACITY AS DESIGNATED FEDERAL OFFICER FOR THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY
1600 Pennsylvania Ave NW, Washington DC 20500

TIMOTHY R. HORNE, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION
1800 F St. NW, Washington, DC 20405

MARCIA L. KELLY, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ADMINISTRATION
1600 Pennsylvania Ave NW, Washington DC 20500

Defendants.

Case: 1:17-cv-01354    (D-Deck)
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 7/10/2017
Description: TRO/PI

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

## INTRODUCTION

1. This case seeks to ensure public accountability and transparency in what could be one of the most consequential federal advisory committees ever created: the recently launched Presidential Advisory Commission on Election Integrity.

2. The Federal Advisory Committee Act ("FACA") demands no less. Congress passed FACA in 1972 "to control the advisory committee process and to open to public scrutiny the manner in which [the Federal government] obtain[s] advice from private individuals." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1072 (D.C. Cir. 1983). FACA imposes strict transparency requirements when any part of the Executive Branch—including the President—seeks the advice or recommendations of a group that includes non-federal officials. Congress imposed these requirements "to prevent the surreptitious use of advisory committees" by persons seeking to "advance their own agendas." H.R. Rep. No. 92-1017 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3500; *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999). As Congress explained in passing FACA, the law's "requirement of openness is a strong safeguard of the public interest" against these pernicious risks. H.R. Rep. 92-1017, 1972 U.S.C.C.A.N. at 3500.

3. FACA imposes two main transparency requirements: (1) all committee meetings must be open to the public; and (2) the committee must publicly disclose all of its records—from internal emails to briefing books to the group's agendas—before or at its meetings. 5 U.S.C. app. II § 10(a)-(b).

4. Congress passed FACA to require transparency from advisory committees precisely like the Presidential Advisory Commission on Election Integrity (the "Commission"). The Commission will evaluate issues of immense national importance and controversy,

potentially leading to changes in election laws throughout the nation that will affect the voting rights of millions of Americans and the integrity of our democratic system.

5. What's more, there is strong reason to believe that the Commission is being used to advance private agendas. The Commission was born out of President Trump's unfounded claim that there were 3 to 5 million illegal votes cast in the Presidential election. The President has said, on multiple occasions, that the Commission will seek to substantiate this claim. Whether and how the Commission develops evidence regarding this claim is of profound national importance, and must be subject to the fullest public scrutiny as required by FACA.

6. If that were not enough, the Commission's Vice Chair is Kansas Secretary of State Kris Kobach. Kobach is using his role on the Commission to promote his candidacy for Governor of Kansas, including to solicit campaign contributions. Kobach also has a long and sordid history of promoting voter fraud theories without evidence, and this Commission is his opportunity to acquire a patina of respectability for his efforts. These machinations make transparency even more important.

7. The stakes of this case are enormously high, but the law is straightforward. Section 10 of FACA requires the Commission to disclose its records before its meeting on July 19, 2017, and the Commission cannot hold that meeting if it has not met its disclosure obligations by that date. The Lawyers' Committee for Civil Rights Under Law has requested that the Commission produce its records, but the Commission has not done so. Section 10(a) of FACA also requires that meetings of the Commission be open to public attendance and participation. The Commission has violated this requirement by blocking the public from attending and participating in the July 19 meeting, and it previously violated the requirement by conducting a telephonic meeting on June 28 without public notice or attendance.

8. Defendants can hide from the public no more. This Court should order Defendants to comply with FACA by producing the Commission's records, by opening the July 19 meeting to in-person public attendance and participation, and by declaring that the Commission's June 28 telephonic meeting violated FACA.

## PARTIES

9. Plaintiff Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") was founded in 1963 and is committed to full and fair enforcement of federal civil rights laws and ensuring equal justice under law for all. The Lawyers' Committee has been at the forefront of the legal struggle to advance and protect the right to vote, and accordingly has substantial interest in the work and potential consequences of the Commission. The Lawyers' Committee's rights under FACA have been violated by Defendants' closing the Commission's July 19, 2017 meeting to public attendance and refusing to disclose the Commission's records. The Lawyers' Committee requires access to the Commission's records and meetings to properly evaluate the Commission's recommendations to the President, which will likely be used to try to enact further voting restrictions that discriminate against racial and ethnic minorities, the poor, and other vulnerable populations.

10. Defendant Presidential Advisory Commission on Election Integrity is a federal advisory committee established by Executive Order on May 11, 2017.

11. Defendant General Services Administration is a federal agency that, under the Executive Order creating the Commission and the Commission's Charter, must provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary, and must perform the President's functions under FACA.

12. Defendant Executive Office of the President is a federal agency that consists of fourteen components, including the Office of the Vice President. The Commission has indicated that its electronic records are kept on the Executive Office of the President's computer network.

13. Defendant Office of the Vice President is a component of the Executive Office of the President. The official email address of the Commission is associated with the Office of the Vice President, at ElectionIntegrityStaff@ovp.eop.gov.

14. Defendant Office of Administration is a component of the Executive Office of the President. The Office of Administration manages the unclassified computer network and electronic records of the Executive Office of the President.

15. Defendant Michael R. Pence is the Vice President of the United States and Chair of the Commission. Defendant Pence is named in this suit in his official capacity as Chair of the Commission.

16. Defendant Kris W. Kobach is the Secretary of State of Kansas and the Vice Chair of the Commission. Defendant Kobach is named in this suit in his official capacity as Vice Chair of the Commission.

17. Defendant Andrew Kossack is named in this suit in his official capacity as the Designated Federal Officer for the Commission.

18. Defendant Timothy R. Horne is named in this suit in his official capacity as the Acting Administrator for the General Services Administration.

19. Defendant Marcia L. Kelly is named in this suit in her official capacity as the Director of the Office of Administration.

**JURISDICTION AND VENUE**

20. The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

21. The Court may award declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Administrative Procedure Act, 5 U.S.C. § 706, and may enter writs of mandamus under the Mandamus and Venue Act, 28 U.S.C. § 1361.

22. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1) because Defendants are United States agencies or officers sued in their official capacities, a substantial part of the events or omissions giving rise to this claim occurred in this district, and Plaintiff's principal place of business is in this district.

## STATEMENT OF FACTS

**A. President Trump Creates Commission to Support Claim That Millions of Persons Voted Illegally in Presidential Election**

23. On November 27, 2016, then-President-Elect Donald J. Trump declared that he would have won the popular vote, in addition to the electoral college, if not for millions of purported illegal votes cast for his opponent. Ex. A.

24. Though most elected officials on both sides of the aisle rejected this claim, Kris Kobach vouched for it. Kobach told a local newspaper on November 30, 2016, "I think the president-elect is *absolutely correct* when he says the number of illegal votes cast exceeds the popular vote margin between him and Hillary Clinton at this point." Ex. B (emphasis added).[1] Kobach proclaimed that a "reasonable estimate" was that 3.2 million people had voted illegally. *Id.*

25. Five days after taking office, on January 25, 2017, the President announced via Twitter that he would launch an investigation into voter fraud. Ex. C. In an interview later that same day, the President explained that he launched this investigation to evaluate his claim that

---

[1] Hunter Woodall, *Kris Kobach Agrees with Donald Trump that 'Millions' Voted Illegally But Offers No Evidence,* Kan. City Star, Nov. 30, 2016, http://www.kansascity.com/news/politics-government/article117957143.html.

millions of people had voted illegally in the election. Ex. D.[2] Ten days later in another interview, the President announced that Vice President Pence would chair a commission to conduct the investigation. Ex. E.[3]

26. On February 12, 2017, Assistant to the President and Senior Advisor Stephen Miller reiterated the Administration's prejudgment of the Commission's conclusions in an interview with George Stephanopoulos. Miller stated that the Administration firmly believed that there was rampant illegal voting in the election, and he named someone who professed the same view, Kansas Secretary of State Kris Kobach, as a purported expert who could validate the claim. Ex. F.[4]

**B. President Trump Establishes the Commission Pursuant to FACA**

27. President Trump established the Commission by Executive Order (the "Order") on May 11, 2017. Exec. Order 13799 (Ex. G). As the President had indicated he would do, he appointed Vice President Pence to serve as Chair of the Commission. *Id.* § 2. The Order declared that the Commission's purpose is to "study the registration and voting processes used in Federal elections" and to report to the President on topics including "those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting." *Id.* § 3.

---

[2] *ABC News anchor David Muir interviews President Trump*, Jan. 25, 2017, ABC News, http://abcnews.go.com/Politics/transcript-abc-news-anchor-david-muir-interviews-president/story?id=45047602.

[3] *Donald J. Trump: Interview with Bill O'Reilly of Fox News*, Feb. 3, 2017, The American Presidency Project, http://www.presidency.ucsb.edu/ws/?pid=123062.

[4] *'This Week' Transcript 2-12-17: Stephen Miller, Bob Ferguson, and Rep. Elijah Cummings*, Feb. 12, 2017, ABC News, http://abcnews.go.com/Politics/week-transcript-12-17-stephen-miller-bob-ferguson/story?id=45426805.

28. The Order required the General Services Administration ("GSA") to "provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission." *Id.* § 7. The Order added that "[i]nsofar as [FACA] may apply to the Commission, any functions of the President under that Act, except for those in section 6 of the Act, shall be performed by the Administrator of General Services." *Id.*

29. The Commission from the outset identified itself as a Federal Advisory Committee that was subject to FACA. It filed a Charter as required by FACA on June 23, 2017. Ex. H. In the section on the "Authority" under which the Commission is established, the Charter states: "The Commission is established in accordance with Executive Order 13799 of May 11, 2017, . . . *and the provisions of the Federal Advisory Committee Act ('FACA'), as amended (5 U.S.C. app.)*." *Id.* § 2 (emphasis added).

30. The Charter endeavors to provide the information required by law for federal advisory committee charters, 41 C.F.R. § 102-3.75, including the Commission's objectives and scope, the time necessary to carry out the Commission's work, the Federal officer to whom the advisory committee reports (here, the President), and the agency responsible for providing the Commission necessary support (here, GSA). Ex. H §§ 3–11. The Charter also provides that the Commission "may include both regular Government Employees and Special Government Employees," and that "[t]he records of the Commission and any subcommittees shall be maintained pursuant to the Presidential Records Act of 1978 and FACA." *Id.* §§ 11, 13.

31. The Commission is registered in GSA's "FACA database" and the Charter has been posted to the Commission's page within that database.[5]

32. The same day the President established the Commission, the White House announced the appointment of Kansas Secretary of State Kris Kobach as the Commission's Vice Chair.[6] The Commission has since announced eight additional members, all but one of whom are not full-time federal employees. *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity ("EPIC")*, No. 1:17-cv-01320-CKK (D.D.C.), ECF No. 11-1.

33. The Commission's private-sector members include former Ohio Secretary of State Ken Blackwell and former Department of Justice official Hans von Spakovsky. Both have a long history of attempting to suppress voting rights through spurious claims of voter fraud. Blackwell, as Ohio Secretary of State, once ordered local Ohio election boards to reject voter registration applications unless they were printed on paper of at least 80-pound thickness (as opposed to standard paper).[7] And von Spakovsky, while at the Department of Justice in the early 2000s, "led unsuccessful suits to purge voter rolls in Missouri" and "steamrolled the recommendations of career Justice lawyers."[8]

---

[5] FACA Database, http://www.facadatabase.gov/committee/committee.aspx?cid=2612&aid=74.

[6] *President Announces Formation of Bipartisan Presidential Commission on Election Integrity*, May 11, 2017, WhiteHouse.gov, https://www.whitehouse.gov/the-press-office/2017/05/11/president-announces-formation-bipartisan-presidential-commission.

[7] *Block the Vote, Ohio Remix*, N.Y. Times, June 7, 2006, http://www.nytimes.com/2006/06/07/opinion/07wed1.html?mcubz=1.

[8] Alex Horton & Gregory S. Schneider, *Trump's pick to investigate voter fraud is freaking out voting rights activists*, June 30, 2017, https://www.washingtonpost.com/news/post-nation/wp/2017/06/30/trumps-pick-to-investigate-voter-fraud-is-freaking-out-voting-rights-activists/?utm_term=.ba8eff324e2d.

34. Vice Chair Kobach described the expected work of the Commission in a recent interview with NPR. Kobach said that while the Commission may not give a "definitive answer" that would "prove or disprove" the President's claim of 3 to 5 million illegal votes, the Commission would "collect evidence" and "get the facts on the table" relevant to the President's claim.[9]

35. On June 28, 2017, Vice President Pence presided over a meeting of the Commission held via phone conference. On the call, Vice Chair Kobach discussed with the Commission's members his intention to send a request to all 50 states and the District of the Columbia for the personal information of registered voters.[10] There was no public notice of this June 28 meeting, nor was the public permitted to attend.

36. On June 29, 2017, Vice Chair Kobach sent the letter to state officials requesting the personal information of registered voters.[11] A significant majority of states have refused to abide by this request. The President expressed his frustration with this refusal through Twitter, and in the process again made clear that the central purpose of the Commission was to substantiate claims of purported "voter fraud." Ex. I.

37. The Commission's request for voter data, and its operation more broadly, already is causing significant harm. There have been widespread reports of voters canceling their voter registrations out of fear of what the Commission will do with their personal information. For

---

[9] *Voting Commissioner Kris Kobach Defends U.S. Request For Voter Information*, June 30, 2017, NPR, http://www.npr.org/2017/06/30/535059231/voting-commissioner-kris-kobach-defends-u-s-request-for-voter-information.

[10] Readout of the Vice President's Call with the Presidential Advisory Commission on Election Integrity, June 28, 2017, WhiteHouse.gov, https://www.whitehouse.gov/the-press-office/2017/06/28/readout-vice-presidents-call-presidential-advisory-commission-election.

[11] Bryan Lowry, *Kris Kobach wants every U.S. voter's personal information for Trump's commission*, June 29, 2017, Kan. City Star, http://www.kansascity.com/news/politics-government/article158871959.html.

instance, Colorado officials have reported a 2,150 percent increase in registration cancellations since the Kobach letter was sent.[12] The North Carolina state elections board has been "deluged with calls" from concerned voters, many of whom have requested that their registrations be cancelled.[13] Officials in Florida and Arizona have reported similar responses from their residents.[14]

38. Against this backdrop of intense public interest and concern regarding the Commission's activities, GSA posted notice in the Federal Register on July 3, 2017 that the Commission would meet on July 19, 2017. 2017 Fed. Reg. 14210. The Federal Register notice explained that "[t]he Commission was established in accordance with E.O. 13799 of [May] 11, 2017, the Commission's charter, and the provisions of FACA." *Id.* But despite the Commission's repeated self-identification as an entity governed by FACA, and despite the FACA requirement that meetings be open to public attendance and participation, the notice indicated that the meeting would be closed to public attendance and participation. The notice stated that the public could only watch the meeting via livestreaming on the White House's website. *Id.*

---

[12] Sam Levine, *Colorado Voters Are Canceling Their Registrations After Trump Request For Voter Data*, July 8, 2017, HuffPost, http://www.huffingtonpost.com/entry/colorado-voter-registration_us_59612aa4e4b02e9bdb0d072c.

[13] Lynn Bonner, *NC elections office swamped with calls about voter data going to fraud commission*, July 7, 2017, http://www.charlotteobserver.com/latest-news/article160188674.html.

[14] *Flagler Voters Opting to Cancel Registration in Response to Trump Commission's Sweeping Records Request*, FlagerLive, July 7, 2017, https://flaglerlive.com/109922/voter-registration-commission/; Yvonne Wingett Sanchez & Ronald J. Hansen, *Arizona to oppose handing over voter information to Trump commission*, Ariz. Republic, July 3, 2017, http://www.azcentral.com/story/news/politics/arizona/2017/07/04/arizona-oppose-handing-over-voter-information-trump-commission/449221001/.

### C. Vice Chair Kobach Uses the Commission to Promote His Candidacy for Governor and to Legitimate His Long History of Unsubstantiated Allegations Regarding Voter Fraud

39.     President Trump is not the only person who has a vested personal interest in the Commission. On June 8, 2017, Vice Chair Kobach declared his candidacy for the 2018 gubernatorial election in Kansas.[15] Kobach has aggressively used his role on the Commission to pursue his own partisan and personal agenda of bolstering his candidacy of Governor.

40.     Specifically, Kobach has repeatedly and conspicuously touted his Commission role to promote his candidacy—and to solicit campaign donations—on his campaign website, on his official campaign social media accounts, and in his public appearances. The Lawyers' Committee has filed complaints with the Office of Special Counsel and the Office of Government Ethics alleging that these actions violate the Hatch Act and federal ethics rules, since Kobach holds the status of a special government employee as Vice Chair of the Commission. Exs. J, K.

41.     Kobach's political stock in trade has been to stoke fears of voter fraud, particularly by racial and ethnics minorities, and he now seeks the Commission's stamp of "respectability" for his scurrilous claims. Recently, a federal court granted a preliminary injunction against Kobach to prevent implementation of a law requiring documentary proof of citizenship for voter registration. *Fish v. Kobach*, 189 F. Supp. 3d 1107 (D. Kan. 2016), *affirmed*, 840 F.3d 710 (10th Cir. 2016). Even more recently in the same case, a United States Magistrate Judge fined Kobach $1,000 for making false statements to the court while attempting

---

[15] *See* John Hanna, *Kobach announces a run for Kansas governor*, Hays Post, June 8, 2017, https://www.hayspost.com/2017/06/08/kobach-announces-a-run-for-kansas-governor/.

to withhold documents that the court had ordered to be disclosed. *Fish v. Kobach*, No. 16-2105-JAR, 2017 WL 2719427, at *5 (D. Kan. June 23, 2017).

42. Kobach's record, and his improper use of the Commission for his own personal and partisan interests, casts a cloud over the integrity of the Commission and further elevates the need for transparency. FACA was designed precisely for these purposes—*i.e.*, to shine light on advisory committees that may be misused to advance private interests.

**D.    The Lawyers' Committee's Request for the Commission's Records**

43. On July 3, 2017, the Lawyers' Committee submitted a request for the Commission's records pursuant to Section 10 of FACA. Ex. L.

44. The Lawyers' Committee requested that the recipients produce (Ex. L):

> All emails since May 11, 2017 relating to the Commission's establishment, organization, operation, or work sent from or to the Commission's Chair, Vice Chair, other Commission members, or any federal employee (including special government employees) providing support to the Commission; and

> All other documentary materials created or received since May 11, 2017, including but not limited to records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, or agenda, relating to the Commission's establishment, organization, operation, or work that were made available to, or prepared by, the Commission's Chair, Vice Chair, other Commission members, or any federal employee (including special government employees) providing support to the Commission.

45. The Lawyers' Committee further asked that the recipients include within their search responsive files and emails in the personal custody of the Chair, Vice Chair, other Commission members, and relevant federal employees, including in personal and state and local government email accounts, to the extent they are reasonably likely to include responsive records. The Lawyers' Committee also asked for confirmation that any emails related to the Commission sent from or to the Chair, Vice Chair, other Commission members, and all other federal employees (including special government employees) providing support to the

Commission from a non-federal government email account have been forwarded to a federal government email address within 20 days, as required by the Presidential Records Act, 44 U.S.C. § 2209, the Federal Records Act, 44 U.S.C. § 2911, and other applicable laws.

46. The Lawyers' Committee emailed this request on July 3, 2017, and additionally mailed hard copies that were delivered on July 5, 2017. Ex. M. The Lawyers' Committee requested that the recipients produce responsive materials sufficiently in advance of the Commission's July 19, 2017 meeting to permit adequate time for review, and no later than July 14, 2017. Ex. L.

47. On July 5, 2017, in response to a separate lawsuit filed by the Electronic Privacy Information Center and contrary to the Commission's charter, Defendants wrote that they "do not concede that FACA applies to the Commission." *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, No. 1:17-cv-01320-CKK (D.D.C.), ECF No. 8 at 12. Defendants thus suggested—for the first time and contrary to the Commission's prior admissions and actions—that the Commission does not consider itself bound by FACA's requirements.

48. On July 9, 2017, the Lawyers' Committee sent a follow-up email confirming that it had not received any response to its request. Ex. N. To date, the Lawyers' Committee has not received any response, or even acknowledgement, of its request for records.

### COUNT I
### Violation of the Federal Advisory Commission Act § 10

49. Petitioners hereby incorporate Paragraphs 1 through 48 above as if they were fully set forth herein.

50. As confirmed by the Executive Order establishing the Commission and its Charter, the Commission is an "advisory committee" as defined under Section 3 of FACA. 5

U.S.C. app. II § 3. The Commission is "established or utilized by the President" and is not composed wholly of full-time, or permanent part-time, federal employees. *Id.*

51. Section 10(b) of FACA requires that the Commission make available "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the Commission and its members. 5 U.S.C. app. II § 10(b). Section 10(b) "affirmatively obligates the Government to provide access to the identified materials," and it must do so "before or at" the Commission's meetings. *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992). These requirements apply to Presidential advisory commissions, including commissions that are based out of the White House and/or chaired by the Vice President. *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999).

52. The records the Commission must disclose include, but are not limited to, emails between the Commission's members. In addition to constituting "records" prepared by the Commission for purposes of Section 10(b), any emails involving between two or more Commission members that discuss the Commission's substantive work constitute a "committee meeting" that must be disclosed. Under FACA, a "committee meeting" includes "any gathering of advisory committee members (whether in person *or through electronic means*) held with the approval of an agency for the purpose of deliberating on the substantive matters upon which the advisory committee provides advice or recommendations." 41 C.F.R. § 102-3.25 (emphasis added). Thus, emails between Commission members meeting this criteria must be open to the public. 5 U.S.C. app. II § 10(a)-(c).

53. Defendants have violated Section 10 of FACA by refusing to provide access to these and the other requested records of the Commission. Defendants have not responded to the

Lawyers' Committee's request and have provided no indication that they will ever produce the Commission's records, let alone prior to the Commission's meeting on July 19, 2017. Moreover, Defendants intimated in their July 5, 2017 brief in the *Electronic Privacy Information Center* case that they do not consider the Commission bound by FACA's requirements. *EPIC*, No. 1:17-cv-01320-CKK (D.D.C.), ECF No. 8 at 12. The Court's intervention is necessary to enforce FACA's record disclosure requirements.

54. Section 10(a) of FACA requires that all meetings of the Commission "shall be open to the public" and "[i]nterested persons shall be permitted to attend, appear before, or file statements" with the Commission. 5 U.S.C. app. II § 10(a).

55. Defendants have violated Section 10(a) at least twice. Defendants failed to provide notice or allow for public attendance of the Commission's June 28, 2017 telephonic meeting where the Commission deliberated upon the request for voter information to be sent to state and local officials. The Commission's substantive discussions are far-removed from the type of "preparatory" or "administrative" work that is exempt from FACA's open meeting requirements. 41 C.F.R. § 102-3.160.

56. Defendants have additionally violated Section 10(a) by closing off the Commission's July 19, 2017 meeting from in-person public attendance and any public participation. Defendants have indicated the July 19 meeting will be solely livestreamed and that no members of the public will be able to attend in-person or to participate in the meeting's discussions or deliberations. This violates both the text and purposes of FACA. FACA requires that the Commission allow the public to physically attend meetings where there is sufficient public interest and demand, which is the case here. With a committee of this size in

membership, scope of duties, and national import, livestreaming does not permit the public to adequately evaluate and hold the Commission accountable for what transpires at the meeting.

57. Absent declaratory and injunctive relief, the Lawyers' Committee will suffer irreparable harm from Defendants' continued violation of FACA.

58. The Lawyers' Committee has no adequate remedy at law.

59. This Court should accordingly declare that Defendants have violated FACA in the ways set forth above, order Defendants to produce records responsive to the Lawyers' Committee's request prior to the July 19, 2017 meeting and to open the July 19, 2017 meeting to in-person public attendance and participation, and enjoin the Commission from meeting on July 19, 2017 (or any date thereafter) until it has complied with its obligations under FACA.

## COUNT II
### Violation of the Administrative Procedure Act

60. Petitioners hereby incorporate Paragraphs 1 through 59 above as if they were fully set forth herein.

61. The Commission, the General Services Administration, the Executive Office of the President, and the Office of the Vice President have each violated the Administrative Procedure Act (APA) by (i) refusing to disclose the Commission's records, in violation of Section 10 of FACA; (ii) failing to open the June 28, 2017 telephonic meeting to the public, in violation of Section 10(a) of FACA; and (iii) closing the July 19, 2017 meeting to in-person public attendance and any public participation, in violation of Section 10(a) of FACA.  5 U.S.C. § 706.  These failures to comply with FACA's requirements constitute final agency action.

62. Absent declaratory and injunctive relief, the Lawyers' Committee will suffer irreparable harm from Defendants' continued violation of the APA.

63. The Lawyers' Committee has no adequate remedy at law.

64. This Court should accordingly declare that Defendants have violated the APA in the ways set forth above, order Defendants to produce records responsive to the Lawyers' Committee's request prior to the July 19, 2017 meeting and to open the July 19, 2017 meeting to in-person public attendance and participation, and enjoin the Commission from meeting on July 19, 2017 (or any date thereafter) until it has complied with its obligations under FACA and the APA.

## COUNT III
### Mandamus and Venue Act (28 U.S.C. § 1361)
**(in the alternative to Counts 1 and 2)**

65. Petitioners hereby incorporate Paragraphs 1 through 64 above as if they were fully set forth herein.

66. In the alternative to Counts 1 and 2, this Court should enter a writ of mandamus compelling Defendants to comply with their clear, non-discretionary disclosure obligations under FACA.

67. Absent mandamus relief, the Lawyers' Committee will suffer irreparable harm from Defendants' continued violation of their obligatory duties under FACA.

68. The Lawyers' Committee has no adequate remedy at law.

69. This Court should accordingly issue a writ of mandamus requiring the Commission to open the July 19, 2017 meeting to in-person public attendance and participation, and to produce records responsive to the Lawyers' Committee's request prior to the July 19, 2017 meeting. The Court should further preclude the Commission from meeting on July 19, 2017 (or any date thereafter), until it has complied with its obligations under FACA.

### PRAYER FOR RELIEF

**WHEREFORE**, the Lawyers' Committee seeks an order and judgment to:

  a. Declare that the Commission is subject to FACA and all of its requirements;

b. Declare that Defendants violated FACA and/or the APA by failing to comply with FACA's open meeting requirements with respect to the Commission's June 28, 2017 telephonic meeting;

c. Declare that Defendants have violated FACA and/or the APA by not opening the Commission's July 19, 2017 meeting to in-person public attendance and participation;

d. Declare that Defendants have violated FACA and/or the APA by not producing records of the Commission that are responsive to the Lawyers' Committee's request;

e. Order Defendants to open the Commission's July 19, 2017 meeting to in-person public attendance and participation;

f. Order Defendants to produce records responsive to the Lawyers' Committee's request prior to the Commission's July 19, 2017 meeting, and to produce any incremental records prior to subsequent meetings;

g. Order Defendants to produce all Commission records related to the June 28, 2017 telephonic meeting; and

h. Enjoin the Commission from meeting on July 19, 2017 (or any date thereafter), until it has complied with its obligations under FACA; or

i. In the alternative to (a)-(h), issue a writ of mandamus providing the same relief.

DATED: July 10, 2017

Respectfully Submitted,

*/s/ signature*

| | |
|---|---|
| Kristen Clarke (D.C. Bar # 973885) | John A. Freedman (D.C. Bar No. # 453075) |
| Jon Greenbaum (D.C. Bar # 489887) | Robert N. Weiner (D.C. Bar # 298133) |
| Ezra D. Rosenberg (D.C. Bar # 360927) | David J. Weiner (D.C. Bar # 499806) |

| | |
|---|---|
| Marcia Johnson-Blanco (D.C. Bar # 495211)<br>LAWYERS' COMMITTEE FOR<br>CIVIL RIGHTS UNDRE LAW<br>1401 New York Ave., NW<br>Washington, DC  20005<br>Telephone:  +1 202.662.8600<br>Facsimile:  +1 202.783.0857<br>erosenberg@lawyerscommittee.org | R. Stanton Jones (D.C. Bar # 987088)<br>Daniel F. Jacobson* (D.C. Bar # 1016621)<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave., NW<br>Washington, DC  20001<br>Telephone:  +1 202.942.5000<br>Facsimile:  +1 202.942.5999<br>John.Freedman@apks.com<br><br>Kathryn W. Hutchinson**<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>44th Floor<br>777 South Figueroa Street<br>Los Angeles, CA 90017-5844<br>Telephone:  +1 213.243.4000<br>Facsimile:  +1 213.243.4199<br><br>Counsel for Plaintiff Lawyers' Committee for Civil Rights Under Law<br><br>*D.D.C. application forthcoming<br>** *Pro hac vice* application forthcoming |