**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER
LAW,

               Plaintiff,

     v.

PRESIDENTIAL ADVISORY COMMISSION ON
ELECTION INTEGRITY; GENERAL SERVICES
ADMINISTRATION, et al.,

               Defendants.

Docket No. 1:17-cv-01354-CKK

Electronically Filed

**MEMORANDUM IN SUPPORT OF PLAINTIFF LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW'S MOTION FOR A STATUS CONFERENCE, FOR
LIMITED EXPEDITED DISCOVERY, AND FOR APPROPRIATE RELIEF BASED ON
DEFENDANTS' FAILURE TO HONOR COMMITMENTS TO THE COURT TO
PRODUCE RELEVANT RECORDS PRIOR TO JULY 19 COMMISSION MEETING**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

I.      Defendants Failed to Abide by Their Representations to the Court
        Regarding the Records They Would Disclose Prior to the July 19 Meeting,
        and Then Set Forth a New Theory of Their Disclosure Obligations .......................... 2

II.     Public Access and Notice Issues .................................................................................. 9

ARGUMENT ................................................................................................................... 11

I.      The Lawyers' Committee Requests a Status Conference Prior to the Next
        Meeting ........................................................................................................................ 11

II.     Limited Expedited Discovery Will Facilitate Efficient Resolution of This
        Case .............................................................................................................................. 12

CONCLUSION ................................................................................................................ 13

**INTRODUCTION**

This Court denied the request of the Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") for injunctive relief based on Defendants' assurances to the Court regarding the records they would produce in advance of the July 19, 2017 meeting of the Presidential Advisory Commission on Election Integrity (the "Commission"), and the public's ability to view that meeting via livestreaming.

Defendants did not abide by their representations to the Court.  Commissioners had with them and discussed voluminous materials at the July 19 meeting that were not publicly disclosed before or during the meeting—including a Heritage Foundation report prepared specifically for the meeting.  And the livestream was completely inoperable for extended periods.

After the meeting concluded, rather than admit their failure to abide by their representations to the Court regarding the records they would disclose before the meeting, Defendants offered the Lawyers' Committee a new legal theory as to the limited set of records they believe they must disclose in advance of a meeting—a theory they never offered to this Court before it ruled on the Lawyers' Committee's motion.  Defendants also, for the first time, responded to the Lawyers' Committee's July 3 request for Commission-related emails and other records, offering an extraordinarily narrow view of Section 10(b)'s requirements.

Given these developments, as well as the Commission's announcement that it will hold several additional meetings over the next few months, including one as early as late August, the Lawyers' Committee respectfully request a status conference with the Court and limited expedited discovery.  It is in the public interest to resolve Defendants' disclosure obligations under FACA—both prior to each meeting and as a whole—as expeditiously and efficiently as possible.  The Lawyers' Committee also seeks to avoid burdening this Court with emergency

motion practice as future meetings approach.  A status conference and limited discovery would

thus preserve judicial economy and promote the overwhelming public interest in this case.

The Lawyers' Committee's notice of appeal is not an obstacle to the relief requested in

this motion.  The appeal of this Court's denial of preliminary injunctive relief will focus on

whether (i) the July 19 meeting satisfied the requirements of Section 10(a) of FACA of being

"open to the public," and that "interested persons shall be allowed to attend," and (ii) Defendants

complied Section 10(b) of FACA in the disclosures they made before the July 19 meeting.  It is

black letter law that when there is an appeal from the grant or denial of a preliminary injunction,

the district court retains jurisdiction to proceed with other aspects of the case, including

development of the record for further adjudication of the merits.  *Ex parte Nat'l Enameling &*

*Stamping Co.*, 201 U.S. 156, 162 (1906); *see, e.g., Zundel v. Holder*, 687 F.3d 271, 292 (6th Cir.

2012); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013).

That is the situation here.  This motion is focused on the timing and sequence of discovery to

allow for the timely resolution of the merits of this case (including the full scope of Section

10(b)), Defendants' records obligations before the Commission's *next* meetings, and the district

court's inherent power to address breaches of litigants' duty of candor to the Court.  *See, e.g.,*

*United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993).

## BACKGROUND

**I.     Defendants Failed to Abide by Their Representations to the Court Regarding the
Records They Would Disclose Prior to the July 19 Meeting, and Then Set Forth a
New Theory of Their Disclosure Obligations**

In denying the Lawyers' Committee's motion for preliminary injunctive relief with

respect to the Commission's July 19 meeting, this Court recognized that, under D.C. Circuit

precedent, Defendants had to disclose relevant records "before or at the meeting at which the

materials are used or discussed" so that the public could "follow the substance of the

discussions." Memorandum Opinion of July 18, 2017 ("Op."), ECF No. 17, at 20 (quoting *Food*

*Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992)). But the

Court found injunctive relief unnecessary at that time given the following representations in the

sworn declaration of the Commission's Designated Federal Office Andrew Kossack and in

Defendants' brief:

- "[O]ther documents that are prepared for or by the Commission will be posted to the Commission's webpage *prior to* the meeting," Decl. of Andrew J. Kossack ("Kossack Decl."), ECF No. 15-1, ¶ 10 (emphasis added);

- "[T]here are few documents that pertain to the meeting," Kossack Decl. ¶ 10;

- "The Commission has always intended to publish documents related to the July 19 meeting on its webpage *in advance of* that meeting—which is all that this Circuit requires that it do." Mem. in Opp'n to Pls.' Mots. ("Defs. Br."), ECF No. 15, at 1 (emphasis added);

- "The Commission will also post online *any materials that have been or will be distributed to the Commission's members* for the July 19 meeting *in advance of* that meeting. Defs. Br. at 6 (emphases added);

- "The Commission will make available records pursuant to FACA section 10(b) in advance of the July 19, meeting." Defs. Br. at 25 (section heading, emphasis omitted);

- "The Commission will post materials related to the July 19 meeting on its webpage *in advance of that meeting*." Defs. Br. at 26 (emphasis added);

- "[T]he Commission has committed to posting the agenda for the July 19 meeting and other pertinent materials on the Commission's webpage *prior to the meeting*." Defs. Br. 27 (emphasis added);

- "The government is required to make these materials available '*before or on* the date of the advisory committee meeting to which they apply.'" Defs. Br. 26 (quoting *Food Chem.*, 980 F.2d at 11469) (emphasis added).

The Court credited these promises, noting that "Defendants, in a declaration submitted to

the Court under penalty of perjury, have represented that prior to the July 19 meeting, they will

make publicly available: (i) the agenda for the meeting; (ii) public comments . . . ., and (iii) other

documents that are prepared for or by the Commission." Op. at 20-21. The Court stressed that

"[d]ocuments 'prepared for or by the Commission' invariably must include documents that will
be 'used and discussed' at the July 19 meeting." *Id.* at 21.

Defendants did not abide by these representations. Prior to the meeting, Defendants
released public comments, but only three documents prepared for or by the Commission: an
agenda, a revised agenda, and draft Committee by-laws. In contrast, at the meeting on July 19,
almost every Commissioner had in front of them multiple binders, prepared remarks, and
extensive other written materials. We now know that these materials included, at the very least:

- Written prepared remarks delivered by nearly every Commissioner, including the Vice
  President and Vice Chair, Ex. A;

- A Heritage Foundation report created specifically for the July 19 meeting—titled
  "Presidential Advisory Commission on Election Integrity"—that Commissioner von
  Spakovsky prepared and distributed to the Commission, Ex. B;

- A printout of a then-non-public, 381-page Heritage Foundation "database" that
  Commissioner von Spakovsky distributed at the meeting, discussed extensively, and said
  purportedly shows 1100 "proven" cases of voter fraud, Ex. C[1];

- A typed list of "Possible Topics for Commission to Address" that Vice Chair Kobach
  distributed during the meeting, Ex. D;

- A 226-page Election Administration and Voting Survey conducted by the U.S. Election
  Assistance Commission, Ex. E; and

- A Yale Law & Policy Review article that Commissioner Blackwell discussed, Ex. F.

We do not know what other materials Commissioners had with them at the meeting, but
there may be many. Commissioners such as Adams, von Spakovsky, Lawson, Blackwell, and
McCormick had stacks of binders and papers in front of them—indeed, several had multiple

---

[1] The Heritage Foundation released the database the day after the meeting, on July 20, 2017. *See*
Jason Snead, *Voter Fraud Database Tops 1,000 Proven Cases*, July 20, 2017, The Heritage
Foundation, http://www.heritage.org/election-integrity/commentary/voter-fraud-database-tops-
1000-proven-cases. Notably, as of the time of this filing, the Commission has not posted this
database discussed at the meeting on the Commission's website.

binders.  Ex. G.  Defendants have not disclosed whether those papers included documents in additions to the ones listed above.

As the images below show, Defendants used the previously-undisclosed materials throughout their discussions:









Contrary to Defendants' representations to the Court, this material was not disclosed before the meeting.  This failure to disclose left members of the public unable to follow—and to meaningfully evaluate—"the substance of the discussions." *Food Chem.*, 980 F.2d at 1472.  For instance, had they been disclosed, the Lawyers' Committee and others could have addressed the allegations and claims in the presentation and "database" that were prepared for the meeting by Mr. von Spakovsky and the Heritage Foundation and discussed at length.

Several hours after the meeting concluded, the Lawyers' Committee informed Defendants that the Lawyers' Committee intended to file a motion to require disclosure of the materials used at the meeting.  Defendants responded that the Commission was "in the process of preparing" to post some subset of these materials that "members . . . brought . . . to share with the other members," but the Commission could not disclose these "instantaneously"—for reasons that were unexplained.  Ex. H (email of July 19, 2017 7:33 PM).

Despite this Court's ruling and Defendants' own representations that they would disclose "any materials that have been or will be distributed to the Commission's members for the July 19 meeting *in advance of* that meeting, Defs. Br. at 6 (emphasis added), Defendants now asserted that there is "no legal requirement . . . that requires the posting of documents introduced at a meeting within hours of the meeting's conclusion."  Ex. H (email of July 19, 2017 7:33 PM). Defendants then threatened to move for sanctions if the Lawyers' Committee filed an emergency motion to require production of the records.  *Id.*

After the Lawyers' Committee explained the legal bases for its proposed motion, Defendants responded with a new legal theory of their disclosure obligations.  Defendants asserted, contrary to their prior representations, that even if Commissioners intend to use or discuss specific materials at a Commission meeting, the Commission need not disclose these materials to the public before the meeting if the materials are "not provided to the other Commission members in advance."  *Id.*  In other words, even if the Chair, the Vice Chair, the Designated Federal Officer, or any individual Commissioner (or subset of Commissioners) knows that he or she will introduce a particular document for discussion, that document does not need to be publicly disclosed unless it is was circulated to *all* Commissioners before the meeting. Of course, Defendants never asserted this theory to the Court before it ruled on the Lawyers' Committee's motion and have identified no legal basis for their post hoc rationalization for violating their commitment to this Court.  There is none.  Such an approach would create a gaping loophole to FACA's requirement that Defendants make available all materials necessary for the public to follow the Commission's discussions.

The day after the meeting, July 20, Defendants posted a subset of the materials used at the meeting.  But Defendants still have not posted on the Commission's website the Heritage

8

Foundation "database" that Commission von Spokovsky claimed at the meeting shows 1100 "proven" cases of voter fraud.  Nor have Defendants posted the prepared remarks of any Commissioner except Commissioner Blackwell.  And Defendants have not confirmed that there were no other materials yet to be posted in the voluminous binders of Commissioners Adams, von Spakovsky, Lawson, Dunn, and McCormick, among others.  Nonetheless, Defendants have asserted to the Lawyers' Committee that they have now satisfied their obligation to post all records (other than meeting minutes and public comments) related to the July 19 meeting. Ex. H (email of July 21, 2017 10:00 AM).

In their correspondence with the Lawyers' Committee, Defendants also elaborated on their new position regarding the records request submitted by the Lawyers' Committee on July 3 for Commission-related emails and other documentary materials.  Defendants asserted that Section 10(b) does not require disclosure of "administrative and other documents not provided to the full committee."  Ex. H (email of July 20, 2017 12:04 PM).  Defendants further asserted that, other than documents now posted on the Commission's website, there are no other existing records that they must disclose under Section 10(b)—not now or ever.  *Id.*

## II.     Public Access and Notice Issues

This Court ruled that Defendants met FACA's public access requirements by offering a livestream of the meeting.  The Lawyers' Committee had noted use of a livestream where a Committee met in-person was unprecedented prior to this administration, and raised concerns that the livestream would experience technical problems or fail to adequately capture the meeting.  *See* TRO Br., ECF No. 3 at 12.  But Defendants assured the Court that there are "no limitations on the numbers of viewers who can access the livestreaming site," and that this was "the same livestreaming system regularly used by the White House."  Kossack Decl. ¶ 7.

9

Those assurances, on which the Court relied, were wrong.  The livestream failed at every turn.  The meeting began a half hour late, and during that period all the public saw on the livestream page was a notification that the event was "Beginning Shortly."  When the livestream did begin, it was inaccessible on certain browsers (*e.g.*, Internet Explorer), and was entirely inoperable for extended periods.  Indeed, in a Facebook post he has since deleted, Mr. Kobach wrote during the meeting that the Commission "was having trouble with our internet service which is causing disruption in our live system."



Even when the livestream was operational, the camera focused solely on the speaker, and thus viewers could not see or hear side conversations between Commissioners and/or their staff.

What's more, Defendants failed to provide adequate notice in the Federal Register regarding the meeting's scope.  In particular, Defendants did not notify the public that President Trump would be making opening comments at the meeting, during which he referred repeatedly to purported mass voter fraud by "non-citizens" and "people in certain states."  The President also emphasized that it was a "bipartisan panel"  consisting of "experts," thus attempting reap the benefits of relying on a federal advisory committee.  And if Defendants' lack of notice of the

President's comments were not enough, the video of these comments is not available on the

Commission's website.[2]

In short, Defendants failed to live up to the commitments they made not only to this

Court, but to the public, regarding the disclosures they would make in advance of the July 19

meeting and the public access they would provide.  And given their newly expressed, cramped

interpretation of FACA, Defendants are planning to continue to fail to meet their disclose

obligations as the Commission has new meetings over the coming months.  Thus, to protect the

public's interest in ensuring Defendants meet their transparency requirements as the Commission

moves forward, to promote judicial economy, and to resolve the full merits questions in this case

in a timely manner given its national import, the Lawyers' Committee requests a status

conference and limited discovery, as set forth below.

## ARGUMENT

### I.      The Lawyers' Committee Requests a Status Conference Prior to the Next Meeting

The Lawyers' Committee respectfully requests a status conference at the Court's earliest

convenience to resolve issues regarding the Commission's pre-meeting disclosure obligations

before its next meeting—which the Commission is planning for the last week of August or the

first two weeks of September.  In light of Defendants' failure to disclose required records before

the July 19 meeting (despite their representations that they would do so), along with their new

and attenuated position regarding their pre-meeting disclosure obligations, the Lawyers'

Committee has significant concerns that Defendants will not meet their transparency obligations

in conjunction with the next meeting or other future meetings.  The Lawyers' Committee also

---

[2] At a link for "Video of the First Meeting," the Commission has posted only the second half of the meeting, leaving out the opening remarks of the President, the Vice President, Mr. Kobach, and the other Commissioners.

believes that there are additional records used at the July 19 meeting that Defendants have still

failed to disclose.

The Lawyers' Committee hopes to avoid burdening this Court with emergency motions

practice and therefore seeks to resolve these outstanding questions sufficiently in advance of the

Commission's next meeting to preserve judicial resources and serve the public interest.  The

status conference could also, if the Court desired, address the discovery request set forth below.

## II.     Limited Expedited Discovery Will Facilitate Efficient Resolution of This Case

The Lawyers' Committee seeks limited expedited discovery to facilitate an efficient and

expeditious resolution of this case.  This Court maintains "broad discretion to tailor discovery

narrowly and to dictate the sequence of discovery."  *Malibu Media, LLC v. John Doe*, 177 F.

Supp. 3d 554, 556 (D.D.C. 2016) (internal quotation marks omitted).  The Court may, pursuant

to that authority, "authorize discovery prior to a Rule 26(f) conference" where there is "good

cause."  *Id.*

There is good cause here.  The ultimate issue remaining in this case is the scope of

Defendants' disclosure obligations under Section 10(b) of FACA.  As this Court noted in its

opinion, "as an equitable and public interest matter, more disclosure, more promptly, is better

than less disclosure, less promptly."  Op. at 24.  Facilitating a timely resolution of Defendants'

disclosure obligations is very much in the public interest.  That is particularly true given the

national controversy and debate surrounding the Commission, and given that the Commission

indicated at the July 19 meeting that it intends to conduct its work rapidly and hold several

additional meetings over the next few months.

The discovery the Lawyer's Committee seeks is narrowly targeted to the ultimate issues

in this case.  First, the Lawyers' Committee requests that Defendants produce a *Vaughn* index of

all documents and other materials withheld that are responsive to the Lawyers' Committee's July 3 request. There is established precedent for this approach. In *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994), the D.C. Circuit addressed whether the records of an advisory group to the U.S. Sentencing Commission were subject to the "common law right of access for public records." The court held that the district court should have required the Sentencing Commission to produce a *Vaughn* index of the records that the plaintiff sought in the case, so that the district court could "know[] precisely what records were at issue." *Id.* at 1452. With the index, the court of appeals explained, the district court could "analyze[] each category of document requested and, if a category [was] reasonably likely to contain publicly accessible documents, each document within such category." *Id.*

A *Vaughn* index would accomplish the same objective here. It would provide important context and details that would enable the Court to better-assess the documents that are at issue and determine whether they are subject to Section 10(b). Particularly given Defendants' track record thus far and their paltry view of FACA requirements, it is important to know what Defendants are *not* producing, as well as what they are making available.

Second, the Lawyers' Committee requests that it be permitted to conduct a small number of depositions, including one or more depositions pursuant to Rule 30(b)(6), focused on questions regarding the Commission's records and recordkeeping practices.

## CONCLUSION

For the foregoing reasons, the Lawyers' Committee respectfully requests that the Court grant this motion for a status conference, for limited expedited discovery, and for appropriate relief based on Defendants' failure to honor commitments to the Court to produce relevant records prior to the July 19 meeting.

DATED:  July 21, 2017                                   Respectfully Submitted,


                                                        /s/   John A. Freedman
Kristen Clarke (D.C. Bar # 973885)                      John A. Freedman (D.C. Bar No. # 453075)
Jon Greenbaum (D.C. Bar # 489887)                       Robert N. Weiner (D.C. Bar # 298133)
Ezra D. Rosenberg (D.C. Bar # 360927)                   David J. Weiner (D.C. Bar # 499806)
Marcia Johnson-Blanco (D.C. Bar # 495211)               R. Stanton Jones (D.C. Bar # 987088)
LAWYERS' COMMITTEE FOR                                  Daniel F. Jacobson* (D.C. Bar # 1016621)
CIVIL RIGHTS UNDER LAW                                  ARNOLD & PORTER KAYE SCHOLER LLP
1401 New York Ave., NW                                  601 Massachusetts Ave., NW
Washington, DC  20005                                   Washington, DC  20001
Telephone:  +1 202.662.8600                             Telephone:  +1 202.942.5000
Facsimile:  +1 202.783.0857                             Facsimile:  +1 202.942.5999
erosenberg@lawyerscommittee.org                         John.Freedman@apks.com


                                                        Kathryn W. Hutchinson
                                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                                        44th Floor
                                                        777 South Figueroa Street
                                                        Los Angeles, CA  90017-5844
                                                        Telephone:  +1 213.243.4000
                                                        Facsimile:  +1 213.243.4199


                                                        Counsel for Plaintiff Lawyers' Committee for
                                                        Civil Rights Under Law


                                                        *D.D.C. application pending

14