IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*,<br><br>Defendants. | Civil Action No. 1:17-cv-1354 (CKK) |

## SECOND DECLARATION OF ANDREW J. KOSSACK

I, Andrew J. Kossack, declare as follows:

1. As I described in my first declaration, ECF No. 15-1, I am the Executive Director and Designated Federal Officer for the Presidential Advisory Commission on Election Integrity ("Commission"), and a full time government employee in the Office of the Vice President. My duties include providing administrative and staff support to the Commission and its members, approving or calling meetings of the Commission, attending meetings, and related responsibilities. I submit this declaration in support of Defendants' Opposition to Plaintiff's Motion for a Status Conference, for Limited Expedited Discovery, and for Appropriate Relief. This declaration is based on my personal knowledge and upon information provided to me in my official capacity as the Commission's Executive Director and Designated Federal Officer responsible for the administration of the Commission.

2. In my previous declaration, I advised the Court that the July 19, 2017, meeting

was an initial meeting where the commissioners would introduce themselves and discuss the general direction for the Commission's work, and there would therefore be few documents that would pertain to that meeting. I also committed to posting documents that were prepared for or by the Commission in advance of the meeting. Consistent with that commitment, staff posted all the documents pertaining to that meeting that were provided to the Commission members before the July 19 meeting. These documents were included in a binder provided to each Commission member at the meeting. The binder contained: (1) Executive Order 13799; (2) the Commission's charter; (3) the Commission's draft by-laws; and (4) the revised meeting agenda. Each binder also contained several blank pages for notetaking. As noted, the four documents were made publicly available in advance of the meeting. Executive Order 13799 was published in the Federal Register on May 11, 2017. *See* 82 Fed. Reg. 22389 (May 11, 2017). The Commission's charter was posted on the Commission's webpage, https://www.whitehouse.gov/blog/2017/07/13/presidential-advisory-commission-election-integrity, on July 14, 2017. The initial meeting agenda was posted on the Commission's webpage on July 14, 2017. The draft by-laws and revised meeting agenda were posted on the Commission's webpage on July 18, 2017.

3. Commission staff did not know with certainty what materials individual Commission members would incorporate into their introductory remarks or the discussion period in the afternoon session, if any. Due to time constraints, I asked members to limit their introductory remarks to five minutes, so I was uncertain whether any member would choose to introduce documents during that brief time period during meeting. At least one member mentioned to me the possibility of introducing documents that the member ultimately did not introduce at the meeting. The documents Commission members distributed at the meeting were introduced and

provided to the Commission members for the first time at the meeting. Accordingly, I could not have made those materials public in advance of the meeting, and did not believe it was necessary to post such materials publicly until such materials were distributed to the full Commission. Within approximately two hours of the end of the meeting, I gathered the documents introduced or distributed at the meeting that I was aware of and asked our technical team to post all of the meeting documents to the Commission webpage as soon as possible. The only vote that occurred at the meeting was to pass the proposed by-laws, which were provided in advance to Commission members and posted in advance of the meeting. The proposed by-laws were posted to the webpage the same day members received them.

4. Neither the President, the Vice President, Vice Chair Kobach, nor the Commission members provided all the Commission members with a copy of their prepared introductory remarks in advance of the July 19 meeting. And, with the exception of J. Kenneth Blackwell, neither the President, the Vice President, Vice Chair Kobach, nor the Commission members shared copies of their prepared introductory remarks with Commission members at or after the meeting. Mr. Blackwell brought copies of his prepared introductory remarks to the meeting and distributed them himself to the other Commission members during the meeting. A copy of Mr. Blackwell's prepared introductory remarks was posted to the Commission's webpage within 24 hours of the conclusion of the meeting, which was as soon as the technical staff could upload it. A transcript of the Commission members' introductory remarks, including the introductory remarks of the President, Vice President and Vice Chair Kobach, was also posted to the Commission's webpage within 24 hours of the conclusion of the meeting, as was a video link of the entire meeting.

5. I was unaware of the possibility of the President's appearance before the

commencement of the July 19 meeting until late in the afternoon on the day prior to the meeting. Prior to then, I had no expectation that the President would attend. A link to the transcript of the President's remarks was posted to the Commission's webpage within 24 hours of the conclusion of the meeting, at https://www.whitehouse.gov/blog/2017/07/13/presidential-advisory-commission-election-integrity. Additionally, the video of the meeting is available on the Commission's webpage includes the President's remarks.

6. Several Commission members introduced and distributed documents at the July 19 meeting that were not provided to the other Commission members in advance of the meeting. Commission member Hans von Spakovsky introduced a PowerPoint document titled "Presidential Advisory Commission on Election Integrity" and a printout of a Heritage Foundation database of voter fraud cases from around the country. Mr. von Spakovsky distributed copies of both documents to the other Commission members at the meeting, and noted during his introductory remarks that the database is easily accessible on the Heritage Foundation's website. The website address for the database was included in the PowerPoint document. The PowerPoint document was posted to the Commission's webpage within 24 hours of the conclusion of the meeting. A direct link to the database is also now available on the Commission's webpage.

7. Vice Chair Kobach introduced and distributed during the meeting a handout to Commission members containing a list of possible topics for the Commission to address moving forward. Vice Chair Kobach did not finalize this handout until late in the evening prior to the meeting. Commission member Christy McCormick brought to the meeting and distributed to Commission members a copy of the Election Administration and Voting Survey conducted by the U.S. Election Assistance Commission. And Commission member J. Kenneth Blackwell

introduced and distributed to Commission members an article from the Yale Law & Policy Review. All of these documents were provided to the Commission members for the first time at the meeting, and were posted to the Commission's webpage shortly after the meeting. I am not aware of any other meeting-related materials that were distributed to the Commission's members either before or during the July 19 meeting that have not been posted to the Commission's webpage. Other than administrative-related communications unrelated to the substance of the Commission's work, the Commission has not withheld from public inspection documents pertaining to the meeting that have been shared with the Commission as a whole, nor does it have any interest in doing so. The Commission's intent is to operate transparently and in full compliance with Section 10(b) of FACA.

8. I am also not aware of any outages or technical issues with the livestream of the July 19 meeting. The meeting was delayed due to last-minute logistical issues associated with the President's attendance. Although the Commission members were gathered in the meeting room, the meeting had not begun and no business was conducted during the delay. The livestream began when the Vice President commenced his remarks welcoming the Commission members and introducing the President. Following the President's remarks, the Vice President started the meeting by striking the gavel and calling the meeting to order. The Commission recessed for a brief lunch break at approximately 12:30 p.m. During the lunch break, the livestream was taken off-line. The meeting, and the livestream, resumed after the lunch break, uninterrupted, until the meeting was adjourned. The livestream was captured and the video of the entire meeting is available on the Commission's webpage. After the meeting was posted online, I learned that there was a portion of the meeting where the video and audio were out of synch when the video was played using Microsoft Explorer. That was quickly fixed by our technical staff.

9. The post on Vice Chair Kobach's Facebook page was written by one of the Vice Chair's staffers in Kansas who was attempting to permit members of the public to view the meeting on the Vice Chair's Facebook page. The staffer in Kansas experienced technical difficulties in carrying the livestream of the meeting on the Vice Chair's Facebook page and suggested that interested members of the public go directly to the White House website to view the livestream. The staffer's suggestion did not mean that there was a technical issue with the White House livestream itself.

10. The Commission will continue to make documents available that relate to the July 19 meeting as those documents are received and created. For example, minutes of the meeting will be prepared and posted to the webpage within 90 days, in accordance with FACA regulations. And public comments received in connection with the July 19 meeting will also be made publicly available either on the webpage or in hard copy. The Commission is working with staff at the General Services Administration to make arrangements for any member of the public who wishes to inspect the Commission's records in hard copy form to do so at the offices of the General Services Administration.

11. The Commission is currently in the process of selecting a date in early-to-mid-September for its next meeting.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

\*\*\*

Executed this 31st day of July 2017.

*/s/ Andrew J. Kossack*
Andrew J. Kossack