# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,<br><br>    Plaintiff,<br><br>    v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; GENERAL SERVICES ADMINISTRATION, et al.,<br><br>    Defendants. | Docket No. 1:17-cv-01354-CKK<br><br>Electronically Filed |

# PLAINTIFF LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW'S PROPOSED DISCOVERY PLAN

Pursuant to this Court's August 18, 2017 Order, the Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") hereby submits its proposed plan for expedited discovery from the Presidential Advisory Commission on Election Integrity (the "Commission").

## I.   *Vaughn* Index

The Lawyers' Committee reiterates its request that Defendants produce a *Vaughn* index of all documents and other materials withheld that are responsive to the Lawyers' Committee's July 3, 2017 request for records.  As detailed in the Lawyers' Committee's motion for expedited discovery, the D.C. Circuit's decision in *Washington Legal Foundation v. U.S. Sentencing Commission*, 17 F.3d 1446 (D.C. Cir. 1994), is on-point precedent endorsing the use of a *Vaughn* index, outside of the FOIA context, to provide clarity as to "precisely what records [are] at issue" in this case.  *Id.* at 1452.  The index will substantially aid the Court in evaluating whether the records listed are subject to Section 10(b) of FACA. Given Defendants' mutable explanations of their conduct and interpretations of their responsibilities, it is important that the Lawyers' Committee and Court be able to see precisely what records exist and are at issue, rather than having to rely on Defendants' generalizations.[1]

---

[1] The *Vaughn* index will reveal, for example, whether there are substantive communications or documents being exchanged between only a subset of commissioners.  While the Lawyers' Committee believes that such communications and documents are clearly subject to disclosure under Section 10(b) and D.C. Circuit precedent, Defendants have argued that such materials are not subject to Section 10(b) because they have not been shared with all commissioners.  There is strong reason to believe such materials exist. In recent news accounts, the Commission's Democratic members have reported that they have received no communications related to the Commission since the July 19 meeting and thus have not been involved in any way in the Commission's work.  *See* Kira Lerner, *Democrats on Trump's voting commission iced out since last meeting*, Think Progress, Aug. 22, 2017, https://thinkprogress.org/democrats-voting-commission-ceec3ea98a33/.

## II.     Interrogatories and Requests for Production of Documents

The Lawyers' Committee also seeks to serve a limited number of interrogatories and requests for productions of documents (RFPs) narrowly targeted at jurisdictional and core merits issues:[2]

- **Category 1**: The Commission's records maintenance practices, including technical, administrative, and other steps taken to preserve Commission communications and other materials, guidance provided to Commission members and staff regarding records preservation obligations, and efforts to identify and retrieve Commission communications (if any) and other materials outside of official government systems.

    **Legal Justifications**:  Under the Commission's charter, "[t]he records of the Commission" must be "maintained pursuant to the Presidential Records Act of 1978 and FACA."  ECF No. 1-1 Ex. H.  The Presidential Records Act requires that all "documentary materials," including electronic communications, that are "created or received" by Commission members or staff and that "relate to or have an effect upon" their official duties must be archived on official government systems.  44 U.S.C. §§ 2201-03.  The Lawyers' Committee believes that most or all of these Presidential records are also subject to Section 10(b) of FACA.  *See* ECF No. 1 ¶ 44; General Records Schedule 6.2.  The Lawyers' Committee accordingly seeks discovery regarding measures Defendants have taken to comply with their records preservation requirements.  This discovery will explore whether communications and other materials are on non-archived systems (*e.g.*, in personal email accounts, texts, and instant messages), as Defendants have an obligation to search and retrieve responsive records from such systems.  *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149-50 (D.C. Cir. 2016); *see also* GRS 6.2 FAQ 16, ECF No. 24-2 (explaining that FACA DFOs must ensure preservation of "correspondence between committee members and others that relate to the committee's decisions or actions").  In addition to these issues, the Commission's compliance with PRA and FACA requirements may be relevant to jurisdictional issues, including the appropriateness of mandamus relief.

- **Category 2**: The existence of Commission records meeting the criteria for "substantive committee records" under GRS 6.2, and how the Commission has identified and collected each category of "substantive committee records" in GRS 6.2.

    **Legal Justifications**: As explained in the Lawyers' Committee's previous briefs, Section 10(b) of FACA requires disclosure of all records that qualify as "substantive committee records" under GRS 6.2.  *See* ECF No. 16 at 15; ECF No. 24 at 3; *see also* GRS 6.2 FAQ

---

[2] For clarity, this is a list of issues that will be the subject of discovery requests, not the actual interrogatories and RFPs that the Lawyers' Committee are seeking to serve.

2

17, ECF No. 24-2 ("Exchanges of substantive information between members regarding the work of the committee or subcommittee are records that reflect the work of the committee and document its thought processes."). Like the *Vaughn* index, information illuminating what GRS 6.2 materials exist will aid the Court in evaluating the ultimate merits questions regarding the scope of Defendants' obligations under Section 10(b). In addition to these issues, the Commission's compliance with PRA and FACA requirements may be relevant to jurisdictional issues, including the appropriateness of mandamus relief.

- **Category 3**: Efforts by the Commission to identify and *collect* all materials to be used or discussed at the Commission's meetings.

  **Legal Justifications**: D.C. Circuit precedent requires the Commission to disclose, before or at its meetings, any documents that will be used or discussed at the meetings. *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992). It is undisputed that Defendants did not disclose such records in advance of the Commission's July 19, 2017 meeting. It is important to determine how Defendants interpret and implement their obligation to identify and collect the materials that commissioners used or discussed at the July 19 meeting and that will be used and discussed at future meetings. In addition to these issues, the sufficiency of the Commission's efforts may be relevant to jurisdictional issues, including the appropriateness of mandamus relief.

- **Category 4**: The role of the General Services Administration (GSA) in providing support to the Commission, including GSA's role in scheduling Commission meetings and in managing and advising on the Commission's obligations regarding disclosure of records.

  **Legal Justifications**: This category is pertinent to this Court's jurisdiction under the Administrative Procedures Act (APA). As explained in the Lawyers' Committee's briefs, GSA has taken a role in organizing and scheduling the Commission's meetings, and in instructing the Commission on their records obligations. ECF No. 24 at 15-16. For instance, GSA delivered a presentation to the Commission on July 19, 2017 titled "GSA FACA Overview" that includes slides on permissible communications between commissioners and "transparency" and records requirements.[3] It will be highly relevant to know which officials from GSA prepared and delivered this presentation and any elaboration they offered on the Commission's records obligations during the presentation or at other times.

- **Category 5**: The Commission's performance of "substantial independent functions" (if any) beyond advising the President.

---

[3] *See* https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/PACEI-GSA-FACA-Overview.pdf (slides 11 and 22).

**Legal Justifications**: This category is also relevant to this Court's jurisdiction under the APA. This Court held in the *EPIC* case that "[t]he record presently before the Court [was] insufficient to demonstrate that the Commission is an 'agency' for purposes of the APA." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 17-cv-01320-CKK, ECF No. 40 at 27. The *EPIC* decision noted that the Commission had represented that "no other federal agencies [were] 'cooperating' with the Commission" and that the request to states for voter data was solely to advance the Commission's "stated purpose of producing an advisory report for the President." *Id.* at 27-28. Subsequent communications from the Commission have cast doubt on these representations, and discovery will illuminate whether they were accurate.[4] If, for example, the Commission or individual commissioners share the voter data or the related statistical analysis directly with the Department of Justice, with state and local governments, or with private organizations, rather than including the analysis only in a public report to the President, that would strongly indicate that the Commission is exercising substantial independent functions and not merely advising the President.

## III.   Requested Depositions

For the reasons set forth in the Lawyers' Committee motion, ECF No. 21-1, a custodian of records Rule 30(b)(6) deposition is an efficient mechanism to identify the existence and location of relevant Commission documents. The Lawyers' Committee previously submitted a list of sample Rule 30(b)(6) topics regarding the Commission's records and recordkeeping practices (consistent with Categories 1 and 2 described above). *See* ECF No. 24-3.

In addition to a deposition on these topics, the Lawyers' Committee also seeks the following discrete testimony:

- Additional 30(b)(6) testimony from the Commission regarding Categories 3-5 described above.

- Testimony from the Designated Federal Officer, Andrew Kossack, regarding all five categories of information and materials described above. Such testimony would include questions regarding Mr. Kossack's adherence to the guidance in GRS 6.2 FAQ 16 and 17, which instructs that "DFOs . . . should maintain the official records an advisory

---

[4]Two days after the Court issued its decision in EPIC, Commission Vice Chair Kobach sent a letter to all Secretaries of State indicating that in addition to collecting voter data, the Commission also intends to analyze the data, including conducting a "statistical" analysis and making "other general observations that may be drawn from the data " Ltr. from Presidential Advisory Commission on Election Integrity to The Hon. John Merrill, July 26, 2017 (hereinafter "July 26 Letter"), https://tinyurl.com/yc5c7xcf.

committee creates or receives as long as the committee exists," including "records such as correspondence between committee members and others that relate to the committee's decisions or actions." GRS 6.2 FAQ 16, ECF No. 24-2. In the event Mr. Kossack is not designated as the Rule 30(b)(6) witness, his personal testimony on these topics is germane to jurisdictional and merits issues.

- Testimony from Commission Vice Chair Kobach regarding Categories 1, 2, and 5 described above. Vice Chair Kobach, as the operational leader of the Commission, has unique knowledge regarding whether he or other commissioners have communicated or kept documents regarding the Commission outside of official federal government systems, the existence of certain types of records (such as any documents relating to the Commission that have not been shared with the full Commission), and whether the Commission's anticipated activities extend beyond providing advice to the President.

## IV. Timing

Earlier today, the Defendants announced that the next public meeting of the Commission will take place on September 12 in Manchester, New Hampshire, with the public comment period closing on September 8.[5] The notice does not indicate whether the Commission will (i) make documents relating to the meeting available before the public comment period closes or (ii) otherwise take steps to enable meaningful public participation.

So that the Lawyers' Committee will have the opportunity, if necessary, to seek further relief from the Court in advance of that meeting, the Lawyers' Committee proposes the following schedule for discovery:

- On or by August 31, 2017, the Lawyers' Committee will serve Defendants with Interrogatories, Requests for Production of Documents, and Notices of Deposition for Defendants' 30(b)(6) witness, Designated Federal Officer Kossack, and Vice Chair Kobach.

- On or by September 5, 2017, Defendants will produce a Vaughn index detailing each record currently withheld that is responsive to the Lawyers' Committee's July 3, 2017 request for records.

---

[5] The notice provides that there will be no oral comments from the public at the meeting. *See* The Presidential Commission on Election Integrity *Upcoming Public Advisory Meeting* (Aug. 25, 2017), available at https://s3.amazonaws.com/public-inspection.federalregister.gov/2017-17968.pdf

- On or by September 6, 2017, Defendants will make available for deposition Defendants' 30(b)(6) witness(es).

The Lawyers' Committee believes that the production of the Vaughn index and 30(b)(6) testimony will be sufficient to identify any issues warranting emergency injunctive relief.

Following that time, the Lawyers' Committee proposes the following schedule for the completion of discovery:

- On or by September 15, 2017, Defendants will provide substantive responses to the Interrogatories and produce documents responsive to the Requests for Production of Documents.

- On or by September 22, 2017, the parties shall complete the depositions of Designated Federal Officer Kossack, and Vice Chair Kobach.

## CONCLUSION

This discovery narrowly targets jurisdictional issues and other information essential to determining the Commission's compliance with its obligations under FACA. For the foregoing reasons, the Lawyers' Committee respectfully requests that the Court approve the proposed discovery plain set forth above.

DATED:  August 24, 2017

Respectfully Submitted,

/s/  John A. Freedman

| | |
|---|---|
| Kristen Clarke (D.C. Bar # 973885) | John A. Freedman (D.C. Bar No. # 453075) |
| Jon Greenbaum (D.C. Bar # 489887) | Robert N. Weiner (D.C. Bar # 298133) |
| Ezra D. Rosenberg (D.C. Bar # 360927) | David J. Weiner (D.C. Bar # 499806) |
| Marcia Johnson-Blanco (D.C. Bar # 495211) | R. Stanton Jones (D.C. Bar # 987088) |
| LAWYERS' COMMITTEE FOR | Daniel F. Jacobson* (D.C. Bar # 1016621) |
| CIVIL RIGHTS UNDER LAW | ARNOLD & PORTER KAYE SCHOLER LLP |
| 1401 New York Ave., NW | 601 Massachusetts Ave., NW |
| Washington, DC  20005 | Washington, DC  20001 |
| Telephone:  +1 202.662.8600 | Telephone:  +1 202.942.5000 |
| Facsimile:  +1 202.783.0857 | Facsimile:  +1 202.942.5999 |
| erosenberg@lawyerscommittee.org | John.Freedman@apks.com |

Kathryn W. Hutchinson
ARNOLD & PORTER KAYE SCHOLER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA  90017-5844
Telephone:  +1 213.243.4000
Facsimile:  +1 213.243.4199

Counsel for Plaintiff Lawyers' Committee for Civil Rights Under Law

*D.D.C. application pending