**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, | Civil Action No. 1:17-cv-1354 (CKK) |
| Plaintiff, | |
| v. | |
| PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; *et al.,* | |
| Defendants. | |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S PROPOSED DISCOVERY PLAN</u>**

# INTRODUCTION

Plaintiff has moved for expedited discovery related to whether defendants have complied with their representation that documents "prepared for" the Commission's July 19 meeting would be made publically available pursuant to section 10(b) of the Federal Advisory Committee Act ("FACA"). *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992) ("[W]henever practical, parties [should] have access to the relevant materials before or at the meeting at which the materials are used and discussed."); *see also* Mem. Supp. Pl.'s Mot Status Conference, ECF No. 21-1; Order (Aug. 18, 2017), ECF No. 25.

The present dispute involves only a few documents: background materials that were produced by individual Commissioners and distributed to the Commission for the first time at the July 19 meeting itself. There is no on-point case law addressing whether these documents would be covered by section 10(b) *before* being shared with the full Commission. Accordingly, Commission staff followed the guidance that was available—including an Office of Legal Counsel opinion that explained that section 10(b)'s disclosure requirement did not apply to "material [that] was not used by the committee as a whole" — and therefore reasonably believed that documents prepared by individual members did not need to be released pursuant to section 10(b) until they had been shared with the Commission. Mem. for Ass't Att'y Gen., Office of Legal Policy, from John O. McGinnis, Dep'y Ass't Att'y Gen., Office of Legal Counsel, Disclosure of Advisory Committee Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73, 76 (1988). The Commission's representation, which quoted the language of FACA, was informed by these interpretations.

If the Commission staff erred, they did so because of a good-faith error in their legal interpretation; and defendants sincerely apologize to the Court and to the plaintiff for the

confusion over document disclosures with respect to the July 19 meeting.  There was not then, and there is not now, any intent to deceive or mislead the Court or the plaintiff.  The Commission fully intends to comply with FACA section 10(b) and its representations to this Court, and believes it has done so to date.

If the Court concludes that defendants' legal interpretation was wrong, the remedy would be for the Court to clarify the scope of the Commission's responsibilities moving forward and to order the disclosure of any section 10(b) documents used and discussed at the July 19 meeting (all of which the Commission believes have been released).  This is a legal dispute where the relevant facts are not in dispute.  But the discovery plan plaintiff submitted to this Court extends far beyond the narrow legal issue about the timing of document disclosure pursuant to FACA section 10(b), and instead seeks expedited merits discovery unrelated to the Commission's representations about the July 19 meeting.  This discovery is inappropriate and should be rejected.

Plaintiff's discovery plan seeks broad and expedited merits discovery on the Commission's general document practices (including those unrelated to either the July 19 or the upcoming September 12 meeting), the role of the General Services Administration, and the Commission's activities writ large, all prior to the time by which defendants are due to respond to the complaint.  And plaintiff seeks that discovery through multiple forms, including interrogatories and requests for document production, personal testimony from the Commission's Designated Federal Officer and Vice Chair and Rule 30(b)(6) depositions – all to be completed within approximately three weeks of this Court's hearing, and for some of the proposed discovery, much sooner.  This plan does not comport either with this Circuit's recognition that expedited discovery in advance of a Rule 26(f) conference be subject to a

"stringent standard," *In re Fannie Mae Deriv. Litig.*, 227 F.R.D. 142, 142-43 (D.D.C. 2005), or

the Supreme Court's admonition that discovery requests directed to committees that "give advice

and make recommendations to the President" be subject to "special considerations," *Cheney v.*

*U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 383 (2004).

Defendants do not believe fact discovery is appropriate for what is primarily a legal

dispute about the timing of the release of documents pursuant to FACA section 10(b).

Nonetheless, should this Court order expedited discovery, such discovery should be limited to

written discovery related to documents produced for or at the July 19 meeting.  Defendants

respectfully ask that this Court reject plaintiff's overbroad attempt to conduct extensive merits

discovery well in advance of defendants' filing of their responsive pleading and the Rule 26(f)

conference.

## STANDARD OF REVIEW

While Federal Rule of Civil Procedure 26 does not explicitly provide a standard for when

expedited discovery is appropriate, in this Circuit "[t]he limited case law that discusses expedited

discovery, however, reveals two common judicial approaches."  *In re Fannie Mae*, 227 F.R.D. at

142. The first approach "require[s] the plaintiff to demonstrate (1) irreparable injury, (2) some

probability of success on the merits, (3) some connection between the expedited discovery and

the avoidance of the irreparable injury, and (4) some evidence that the injury that will result

without expedited discovery looms greater than the injury that the defendant will suffer if the

expedited relief is granted."  *In re Fannie Mae*, 227 F.R.D. at 142-43 (citing *Notaro v. Koch*, 95

F.R.D. 403, 405 (S.D.N.Y. 1982)).  This approach, called the *Notaro* test, has been adopted by

courts in this District.  *See id.*; *see also Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010);

*Humane Soc'y of U.S. v. Amazon.com, Inc.*, No. 07-cv-623 (CKK), 2007 WL 1297170, at *2

(D.D.C. May 1, 2007). Other courts have used a "reasonableness test," which looks to "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *In re Fannie Mae*, 227 F.R.D. at 143. This standard has been employed "particularly in cases [where] the expedited discovery is related to a motion for a preliminary injunction," *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006); *see also Guttenberg v. Emery*, 26 F. Supp. 2d 88, 97-98 (D.D.C. 2014). Furthermore, when discovery is to be propounded on officials who serve on a committee that "give[s] advice and make[s] recommendations to the President," as here, "special considerations control," *Cheney*, 542 U.S. at 385, in particular, the admonition that discovery be narrowly tailored.

## ARGUMENT

### I. Plaintiff's merits discovery plan does not meet the standards for expedited discovery.

While defendants do not dispute that this Court has the inherent power to evaluate representations made to it, *see, e.g.*, *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998), plaintiff's proposed discovery plan does not seek to test these representations, but instead propounds broad merits discovery unrelated to the instant dispute. Plaintiff therefore must show that its plan meets the standards for expedited discovery, but it has not done so.

To begin, plaintiff's plan fails under the *Notaro* standard, which requires at a minimum a showing both of irreparable injury and a connection between the expedited discovery and the avoidance of that injury to justify discovery before a Rule 26(f) conference. *See In re Fannie Mae*, 227 F.R.D., at 142. Plaintiff does not identify a proposed irreparable injury. To the extent there is one, it presumably would be if the Commission did not provide "access to the relevant

[section 10(b)] materials before or at the  meeting at which the materials are used and discussed." *Food Chem. News*, 980 F.2d at 1472.  But this is ultimately a legal question about whether materials shared by one Commissioner with the full Commission membership for the first time at a meeting need be disclosed before the meeting; it is not a factual question benefiting from discovery, much less expedited discovery.  In any event, the proposed discovery – much of which focuses on the Commission's activities writ large, *see* Proposed Discovery Plan at 2-4, does not address this issue.  *See, e.g.*, *Landwehr*, 282 F.R.D. at 4 (concluding that plaintiffs have not satisfied the *Notaro* test when they "have failed to identify any irreparable injury they will suffer absent expedited discovery."); *Humane Soc'y of U.S.*, 2007 WL 129170, at *2 ("Defendant Marburger never demonstrates what harm, let alone irreparable harm, would befall Defendant Marburger in waiting to depose Ms. Wisor until after a discovery schedule is in place.").

Nor does plaintiff's proposed plan comport with the "reasonableness test" for expedited discovery.  *Disability Rights Council*, 234 F.R.D. at 6.  As an initial matter, this test is particularly employed "in cases where the expedited discovery is related to a motion for a preliminary injunction," *id.*, which is not the case here.  But even if this test does apply, plaintiff has not shown that it is satisfied.  The first factor is "whether a preliminary injunction is pending."  *In re Fannie Mae*, 227 F.R.D. at 143.  It is not.  The second factor is "the breadth of the discovery requests."  *Id.* As will be discussed further, these requests are overbroad.  Instead of merely requesting limited written discovery, plaintiff requests five separate categories of documents, an unknown number of interrogatories covering those topics, at least one Rule 30(b)(6) deposition on these topics, two fact depositions, including one of the Commission's Vice Chair, and a "*Vaughn*" index; all to be completed by September 22.  This request stands in

stark contrast to courts' recognition that requiring even a single expedited deposition can be unreasonable.  *E.g.*, *Humane Soc'y of U.S.*, 2007 WL 1297170, at *3.

The third factor is the purpose for the requested discovery.  In their original motion, the plaintiff suggests the purpose of discovery is whether "Defendants . . . abide[d] by their representations to the Court" with respect to section 10(b) documents discussed at the July 19 meeting.  *See* ECF No. 21-1, at 1.  Plaintiff now mainly forestalls those topics, and instead seeks discovery on a much broader array of "jurisdictional and core merits issues."  Proposed Discovery Plan, ECF No. 26, at 2.  But the purpose of expedited discovery – particularly expedited discovery in advance of a responsive pleading – is not to test the merits of the plaintiff's argument.  *See Guttenberg*, 26 F. Supp. 3d at 99 (rejecting, under the reasonableness test, a request for expedited discovery where "plaintiffs' discovery requests go to the merits of the dispute.").

The fourth factor courts consider is "the burden on the defendants to comply with the requests."  *In re Fannie Mae*, 227 F.R.D. at 143.  As discussed above, plaintiff requests a "*Vaughn* index" that would include all communications by Commission members and staff since May 11, 2017, a date near six weeks prior to the filing of the Commission's charter, regardless of subject, by September 5, 2017 (three working days after the Court holds a hearing on the motion, and the day after Labor Day).  It requests Rule 30(b)(6) depositions by September 6, 2017 covering five broad topics, presumably of an individual who would *also* have been working in preparing the *Vaughn* index, and potentially also an employee of GSA, both of whom would require time to prepare adequately.  It seeks substantive responses to interrogatories and requests for documents by September 15, 2017 (half the time to respond that is provided by the Federal Rules, *see* Fed. R. Civ. P. 33(b)(2)); Fed. R. Civ. P. 32(b)(2)).  And finally, it seeks fact

depositions of Mr. Kossack and Vice Chair Kobach, again on a host of subjects, by September 22, 2017.  Such requests would place a tremendous burden on the Commission and its staff.

Finally, the proposed discovery comes "far in advance of the typical discovery process." *In re Fannie Mae*, 227 F.R.D. at 143.  Defendants' responsive pleading, including its anticipated Motion to Dismiss under Rule 12, is not due until September 11, 2017 – nearly a week *after* the first discovery request would be due.  Courts have repeatedly recognized that expedited discovery filed even after motion-to-dismiss briefing has *concluded* is premature.  *See Guttenberg*, 26 F. Supp. 3d at 99 ("At the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery"); *Landwher*, 282 F.R.D. at 4 (finding motion for expedited discovery filed just after motion-to-dismiss briefing concluded to be premature).  Here, of course, motion-to-dismiss briefing has not yet begun.  For all these reasons, plaintiff's overbroad requests for discovery are not reasonable.

## II.     Plaintiff's specific requests for discovery are overbroad and unreasonable.

While plaintiff's discovery plan does not generally satisfy the standards for expedited discovery, its specific requests are individually overbroad and unreasonable, and should therefore be rejected.

### 1.     *Vaughn* Index

Plaintiff's expedited request for a *"Vaughn* index" of "all documents and other material withheld that are responsive to the Lawyers' Committee's July 3, 2017 request for records" is doubly inappropriate.

First, plaintiff's July 3 request is facially overbroad with respect to FACA section 10(b). Plaintiff, in essence, filed a FOIA request asking for all materials related to the Commission, as it seeks all email and materials sent to or from any Commission member "or any federal employee

. . . providing support to the Commission." *See* July 3 Letter, ECF No. 1-1, at 166.  But section 10(b) only requires materials that "were made available to or prepared for or by each advisory committee shall be made available" to the public.  5 U.S.C. app 2 § 10(b).  It does not include every document related to the Commission; indeed, documents regarding staff activities or subcommittees chaired by committee members are excluded from section 10(b)'s requirements. *See Nat'l Anti-Hunger Coalition v. Exec. Comm. of President's Private Sector on Cost Control*, 557 F. Supp. 524, 529 (D.D.C.) ("[S]urely Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through which recommendations are evolved . . ."), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983); 12 U.S. Opp. Off. Legal Counsel 73, 75 (1988) (section 10(b) does not apply to advisory material produced by staff members, staffing entities, or subcommittees, "so long as the material was not used by the committee as a whole").  Consistent with that authority, administrative and preparatory emails are not covered by section 10(b) and need not be disclosed.  Plaintiff's overbroad *Vaughn* request is improper on its face and should be rejected.  *See Wash. Legal Found*, 17 F.3d at 1452 ("Thus, a court should not order a [*Vaughn*] index when the non-applicability of the [disclosure obligation] is apparent without one.").

Second, there is no basis for a *Vaughn* index of the Commission's materials, and particularly not in the context of expedited discovery over a Commission that has just begun its operations.  *Vaughn* indexes are not part of FACA: instead, the Committee affirmatively produces documents that are covered by section 10(b); those documents that do not fall within section 10(b) are simply not produced, there is no privilege log required for documents that are not covered by 10(b).  In support of its novel theory, plaintiff relies exclusively on *Washington Legal Foundation v. U.S. Sentencing Commission*, 17 F.3d 1446 (D.C. Cir. 1994).  But that case

concerned a separate legal doctrine, the common law right of access, not the proper processing of documents pursuant to FACA section 10(b).  Nor, more to the point, did it involve interlocutory, *expedited* discovery – it involved an order by an appellate court after a district court had ruled on a motion for summary judgment.  *See id.* at 1448.  That allowed the court to rule based on a developed record, not, as here, in the context of an ongoing Presidential Advisory Committee. Plaintiff puts forth no authority that provides for a *Vaughn* index in the context of expedited discovery predating a motion to dismiss, either in FACA or in the FOIA context in which it normally occurs, and indeed, even *Washington Legal Foundation* recognized the burden that a *Vaughn* index imposes.  *See id.* at 1452 ("We are well aware that a *Vaughn* index requires a significant expenditure both of judicial resources and of the parties' time and money.").

The burden is particularly strong here.  The stated basis for plaintiff's motion is whether documents introduced for the first time at the July 19 meeting needed, under section 10(b), to have been disclosed in advance of or at the meeting.  This question about the Commission's section 10(b) obligations is a legal one.  The proper mechanism for resolving it is either at the motion to dismiss stage (to the extent plaintiff's requests are overbroad as a matter of law) or at the summary judgment stage (to the extent that there may be relevant fact issues).  It is not through expedited, pre-motion to dismiss discovery of the form sought here.  Nor should expedited discovery be used as a basis to discover, at this early stage, *all* documents which may eventually be disclosable under section 10(b).  *See Food Chem News*, 980 F.2d at 1472 (imposing disclosure timing obligations only on materials used at a meeting); *see also Anti-Hunger Coal.*, 557 F. Supp. at 529 (rejecting view that FACA plaintiffs should "have a hearing at every step of the information-gathering and preliminary decision-making process").  The propriety of disclosure can – and should – be litigated in the normal course.

**2.      Category One: Information regarding the Commission's record maintenance practices.**

Plaintiff's request for written discovery and the production of documents regarding the Commission's "records maintenance practices" is also overbroad and unreasonable.  As plaintiff itself concedes, "[t]he ultimate issue remaining in this case is the scope of Defendants' disclosure obligations under Section 10(b)."  ECF No. 21, at 12.  As discussed above, the question of what, precisely, section 10(b) requires to be disclosed and, as relevant to the issue currently before the Court, the timing of that disclosure is purely a legal one.  The Court can resolve this legal issue without factual information about the Commission's compliance with the preservation obligations set forth in its charter.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional to the needs to the case*") (emphasis added).

Further, plaintiff has not shown how expedited discovery regarding the Commission's records maintenance practices implicates "jurisdictional and core merits issues."  Proposed Discovery Plan at 2.  Two of plaintiff's claims arise under the Administrative Procedure Act ("APA").  It is well-settled that "[t]he APA . . . is not a jurisdiction-conferring statute."  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006).  Moreover, although the "three threshold requirements" of mandamus "are jurisdictional," *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also* Order, at 2.n2, ECF No. 25, the question of whether the Commission is violating a clear duty to act is predicated on the scope and timing of the Commission's disclosure obligations under section 10(b)—a question of law, not fact.  The question of law should be resolved first as a prerequisite to determining what, if any, additional factual information is required.  And, to the extent plaintiff seeks discovery of the Commission's

records maintenance practices for "core merits issues," it has not even attempted to justify or

otherwise demonstrate a need for such discovery at this early stage of the litigation.

Finally, plaintiff's reliance on *Competitive Enterprise Institute ("CEI") v. Office of*

*Science and Technology Policy*, 827 F.3d 145 (D.C. Cir. 2016), and General Records Schedule

("GRS") 6.2 to justify its request for expedited discovery is misplaced.  The Commission's

charter states that the Commission's records will be "maintained pursuant to the Presidential

Records Act of 1978 and FACA." Charter at ¶ 13, *available at*

https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/commission-charter.pdf.  *CEI*

involves a claim brought under the Freedom of Information Act ("FOIA") and does not address

record management issues associated with the Presidential Records Act of 1978 ("PRA"), 44

U.S.C. §2201 *et seq.  See* 827 F.3d at 147 (observing that "[t]he basic task of a court in

adjudicating alleged wrongful withholdings under FOIA is framed under . . . [t]he Federal

Records Act . . . the Records Disposal Act" and the FOIA).  Importantly, the GRS expressly does

*not* apply to a presidential advisory committee's records that, as here, fall under the PRA.  *See*

GRS 6.2 at 129 (If a "Presidential advisory committee's records fall under" the Federal Records

Act "you may apply this GRS."  If a "Presidential advisory committee's records fall under" the

Presidential Records Act "you should request information on appropriate disposition from

NARA's Presidential Materials Division[.]"); *see also* 44 C.F.R. § 102-3.175(e).  Plaintiff's

proposed discovery regarding the Commission's record maintenance practices should, therefore,

be denied as overbroad and unreasonable.

### 3.    Category Two: The existence, identification, and collection of "substantive committee records" under GRS 6.2

As an initial matter, the only legal justification plaintiff proffers in support of its request

for interrogatories and requests for production of documents relating to the "existence of

Commission records meeting the criteria for 'substantive committee records'" is GRS 6.2. Proposed Discovery Plan at 2-3.  But, as noted above, GRS 6.2 specifically provides that it is not applicable to a presidential advisory committee's records that fall under the PRA.  Instead, the Commission's disclosure obligations are defined in section 10(b) of FACA, as interpreted through this Circuit's case law.  *See, e.g.*, *Anti-Hunger Coal.*, 557 F. Supp. at 529.  Plaintiff's Category 2 request should be denied for this reason alone.

Further, this request is overbroad and unreasonable, at least at this early stage of the litigation.  To begin, the applicability of GRS 6.2 to the Commission in the context of FACA section 10(b) is a legal question prerequisite to any discovery into what the Commission has done with regard to these standards.  Moreover, even if GRS 6.2 were applicable here, the existence or non-existence of  records that qualify as "substantive committee records" under GRS 6.2 is, contrary to plaintiff's assertion, *see* Proposed Discovery Plan at 3, immaterial to resolving the legal question that is currently before the Court—the scope and timing of the Commission's disclosure obligations under section 10(b).  Nor, for the reasons discussed above, is this request relevant to mandamus jurisdiction.  Finally, all of the documents covered by section 10(b) that were provided to the Commission members in advance of and at the July 19 meeting have been posted to the Commission's webpage.  *See* Second Declaration of Andrew J. Kossack ¶¶ 2, 7, ECF No. 23-1.  While the parties disagree on the timing of when those documents should have been disclosed, there is no disagreement as to whether those documents should have been disclosed pursuant to section 10(b).  Plaintiff's request, therefore, is both overbroad and unreasonable.

4.      **Category Three: Efforts by the Commission to identify and collect materials to be used or discussed at the Commission's meetings.**

As plaintiff notes, the factual question of what documents were released, and when, is not in dispute.  What is in dispute is a legal question regarding whether materials need to be collected and disclosed in advance of a Commission meeting when the materials have not been disseminated to the Commission as a whole prior to the meeting.  Because this is a legal dispute, legal clarification of the requirements of section 10(b) should be resolved in the first instance and fact discovery is not relevant to the resolution of that question.  Nevertheless, should the Court disagree, discovery should be limited to a limited number of written interrogatories focused solely on the Commission's efforts to identify and collect materials used or discussed at the July 19 meeting, so long as defendants have adequate time to respond.

5.      **Category Four: GSA's role in providing support to the Commission.**

Plaintiff seeks interrogatories and documents regarding the administrative support and advice the General Services Administration ("GSA") has provided to the Commission because such information is "pertinent to this Court's jurisdiction under the Administrative Procedure[] Act."  Proposed Discovery Plan at 3.  But, as discussed above, it is well settled that "[t]he APA . . . is not a jurisdiction-conferring statute."  *Trudeau*, 456 F.3d at 183.  Thus, this category of proposed fact discovery is simply not relevant as a matter of law to the question of this Court's ability to consider plaintiff's APA claims.  Plaintiff's request amounts to nothing more than a fishing expedition and as such is overbroad and unreasonable.

6.      **Category Five: "The Commission's performance of 'substantial independent functions' (if any) beyond advising the President."**

Plaintiff seeks documents, interrogatories, and at least three depositions (a Rule 30(b)(6) deposition, a deposition of Andrew Kossack, and a deposition of Vice Chair Kobach) regarding

the Commission's activities and duties.  This discovery is overbroad and irrelevant, particularly

at this time, even in the context of the reasons for which plaintiff seeks discovery.  As an initial

note, plaintiff claims that this category is "relevant to this Court's jurisdiction under the APA."

But the D.C. Circuit has explicitly recognized that "the APA does not confer jurisdiction,"

*Trudeau*, 456 F.3d at 185, and so this basis is inadequate as a matter of law.  Nor, in any event,

does this information have any basis on "determining the Commission's compliance with its

obligations under FACA."  Proposed Discovery Plan at 6.  Those obligations are defined, of

course, by FACA, not the APA, and whether the Commission is an "agency" for purposes of the

APA (and it is not) is not relevant to the limited question of FACA disclosure requirements

(which, in any event, would provide the substantive basis for any APA action, even if the APA

did apply).  Moreover, if plaintiff does intend to argue that the APA does apply in response to

defendants' legal arguments that it does not, the proper time for discovery, if at all, would be

after the resolution of defendants' motion to dismiss.  *See Guttenberg*, 26 F.3d at 99 ("At the

very least, reasonableness dictates that the Court consider defendants' motion to dismiss before

requiring extensive and expensive discovery.").

**III.    If there is to be discovery – and there is no basis for it – it should be in writing
and narrowly tailored to the Commission's immediate obligations.**

Finally, if this Court does order expedited discovery – and, as discussed above, there is

no basis to do so – such discovery should be in writing and narrowly tailored to illuminate any

factual questions necessary to resolve legal issues about the Commission's immediate

obligations, *i.e.*, that "whenever practicable, parties have access to the relevant [section 10(b)]

materials before or at the meeting at which the materials are used and discussed."  *Food Chem.

News*, 980 F.2d at 1472.  Broad discovery covering the entire scope of the litigation is not

appropriate at this early stage, and depending on the disposition of the defendants' forthcoming motion to dismiss, may not be appropriate at all.

That is particularly true in this context.  The Supreme Court has cautioned that where "discovery requests are directed to the Vice President and other senior Government officials who serve on a [committee] to give advice and make recommendations to the President," "special considerations control," and the court should be reluctant to approve "overly broad discovery requests."  *Cheney*, 542 U.S. at 385-86.  The proposed discovery requests – which seek deposition testimony from the Vice Chair of the Commission and the Commission's Designated Federal Officer (himself an attorney in the Office of the Vice President) and documents, interrogatories, and Rule 30(b)(6) depositions from a Commission located within the Office of the Vice President – do not comport with this direction.

Indeed, here, plaintiff seeks unspecified discovery requests about the Commission's record maintenance practices (Category 1 and 3), the existence of a broad range of records (which may not even be subject to FACA section 10(b)) (Category 2 and *Vaughn*), the role of the GSA writ large (Category 4), and indeed, the full range of past, present, and potential activities of the Commission (Category 5).  And it seeks to gather that information using the full range of discovery tools, written and oral, and to do so within an extraordinarily short time period.  This is not "precisely identified and specifically enumerated" discovery requests, but are requests that "ask for everything under the sun" and are therefore inappropriate under *Cheney*.  542 U.S. at 387; *see also id.* at 387-88 (identifying overbroad discovery requests).  Moreover, plaintiff also seeks to depose members of the Vice President's staff and the Commission Co-Chair – even the overbroad discovery in *Cheney* did not go so far.

Consistent with *Cheney*'s direction, any discovery in this case should be limited and narrowly tailored – and plaintiff's proposed discovery plan is not.

## CONCLUSION

For the foregoing reasons, plaintiff's proposed discovery plan should be denied.


Dated: August 28, 2017                                    Respectfully submitted,

                                                          CHAD A. READLER
                                                          Acting Assistant Attorney General
                                                          Civil Division

                                                          ELIZABETH J. SHAPIRO
                                                          Deputy Director

                                                          */s/ Joseph E. Borson*
                                                          CAROL FEDERIGHI
                                                          Senior Trial Counsel
                                                          JOSEPH E. BORSON
                                                          KRISTINA A. WOLFE
                                                          Trial Attorneys
                                                          United States Department of Justice
                                                          Civil Division, Federal Programs Branch
                                                          P.O. Box 883
                                                          Washington, DC 20044
                                                          Phone: (202) 514-1944
                                                          Email: joseph.borson@usdoj.gov
                                                          *Counsel for Defendants*