**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, | Civil Action No. 1:17-cv-1354 (CKK) |
| Plaintiff, | |
| v. | |
| PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; *et al.,* | |
| Defendants. | |

**JOINT STATUS REPORT**

Pursuant to the Court's Order of August 30, 2017, the parties hereby report as follows:

**I.      Issues on Which the Parties Reached Have Agreement**

Counsel for the parties held a telephonic meet and confer on September 1, 2017, and reached agreement regarding the following issues.

**A.      Deadline for defendants' submission of declarations and *Vaughn*-type index**

The parties have agreed that Defendants will submit the declarations and *Vaughn*-type index described in the Court's August 30, 2017, order by **September 29, 2017**.  Defendants state that their commitment to this deadline is conditioned on their expectation that the *Vaughn*-type index may group some documents into categories, as discussed further below.

**B.     Timing of document disclosures for the September 12, 2017, meeting**

The Commission staff intends to upload the agenda for the September 12, 2017, meeting by Wednesday, September 6, 2017.  The Commission staff intends to upload all remaining materials for the September 12 meeting by Friday, September 8, 2017.  Public comments will be accepted on a rolling basis, with the Commission to extend the submission window noted in the Federal Register as needed to extend to the submission of the Commission's final report. Comments submitted to the regulations.gov portal up until 11:59 p.m. on any given day are in general posted the following day.  A revised notice advising the public of this policy for receiving comments has been submitted, and it is expected that the revised notice will be posted online on the regulations.gov site on Friday, September 8.  If all of those steps are taken, they will resolve the Lawyers' Committee's concerns about the timing of document disclosures related to the September 12 meeting.

**II.     Issues on Which the Parties Have Not Reached Agreement**

Set forth below are the parties' respective positions regarding issues on which they were unable to reach agreement during the September 1 meet and confer.

**A.     Lawyers' Committee's Positions**

1. Counsel for the Lawyers' Committee attended the meet and confer prepared to discuss "the specifics" of the *Vaughn* index and declarations, as the Court had instructed.  08/30/17 Order at 1 (ECF No. 28); *accord* 08/30/17 Hr'g Tr. 17 (ECF No. 29) ("You can meet and confer and figure out how you want to set out what I've called the Vaughn index.").  Defendants' counsel, however, were not similarly prepared to discuss the issues identified in the August 30 Order.  They in fact took the position—contrary to this Court's explicit direction to discuss "the specifics of these items," 08/30/17 Order at 1—that the purpose of the call was not to discuss

"specifics" at all, but only to agree on a deadline for their submission and discuss the timing of disclosures related to the September 12 meeting.  Defendants' counsel thus stated that they were not prepared to make commitments regarding, among other issues, the type of information or level of detail they will include in the *Vaughn* index or any specifics of the declarations.

2.  Defendants' counsel also stated that they had done little to nothing to begin identifying or collecting documents with respect to the Commission's work to date.  Rather, they said that they have no idea what documents related to the Commission exist, no idea what volume of documents may exist, and no idea how long it will take to collect documents.  In light of all this, it is unclear how Defendants' counsel could have provided their assurance to this Court that they "believe" all documents related to the Commission's July 19 meeting "have been released."  ECF No. 27 at 2.

3.  During the meet and confer, Defendants' counsel indicated that members of the Commission have been using **personal email accounts** rather than federal government systems to conduct Commission work (in violation of federal law, as explained below).  Defendants' counsel further stated they did not yet have any settled plan for how they would collect emails from these personal, non-federal government systems, or even who would conduct the searches.

4.  Despite Defendants' general unpreparedness for the meet and confer, several issues surfaced that warrant further clarification from the Court.  With respect to the *Vaughn* index:

- *"Document-by-Document" Preparation of the* Vaughn *Index*:  Defendants' counsel stated during the meet and confer that they intend to categorize Commission-related emails.  As the Court warned in the August 30 Order, however, "a document-by-document analysis is likely necessary to determine whether a document is actually subject to disclosure pursuant to Section 10(b)."  08/30/17 Order at 2.  Defendants' counsel said that categorization was necessary because of the potential volume of emails among Commission staff regarding ministerial and administrative matters.  However, when the Lawyers' Committee asked that Defendants commit at least to

itemize each email to or from Commissioners themselves—plus any other emails about substantive Commission matters—Defendants' counsel refused.

The Lawyers' Committee does not object to Defendants' categorizing (i) public comments received or (ii) emails solely among Commission staff related to ministerial matters such as scheduling, travel, meals, and reimbursement, so long as the categorical treatment of the ministerial matters reflects a comprehensive list of individuals involved, the date range, and the subject matter of the communications.  It is unclear whether Defendants' vague reference below to "administrative emails" goes beyond such ministerial matters; if so, the Lawyers' Committee objects.  In particular, the Lawyers' Committee submits that the index must include email-by-email entries of every email to or from Commissioners themselves, plus any other emails among staff relating to the Commission's substantive work and any emails with third parties (such as other government agencies) about the Commission's work. In their submission below, Defendants attempt to argue the merits of the scope of Section 10(b), but the point of the *Vaughn* index is for Defendants to present the details of all emails related to the Commission, so that *the Court* can then determine which ones are subject to disclosure.  Defendants cannot decide for themselves which emails fall under Section 10(b) and then include individual entries only for those emails.

The Lawyers' Committee thus requests that the Court direct Defendants to include in the index separate entries for each email sent to or from a Commissioner, plus any emails among staff regarding non-ministerial matters.

- *Email systems*:  Defendants' counsel stated that Commissioners have been using personal email accounts (rather than federal government-issued accounts) to conduct Commission-related work.  Such use of personal email violates the Presidential Records Act (PRA), which Congress amended in 2014 specifically to require that all persons covered by the PRA—including members of this Commission—use official federal government email to conduct government business.  *See* 44 U.S.C. § 2209(a).

    Putting aside the legality of using personal email, it is critically important in this case that Defendants thoroughly search and log any emails from personal accounts used by Commissioners for Commission-related work.  At the meet and confer, Defendants' counsel indicated that they had no plan for conducting such searches, instead stating that their customary practice would be simply to ask Commissioners to search their own emails, unilaterally identify messages that they believe are relevant, and then forward those emails to Defendants' counsel.  This is troubling, both because it calls upon individual Commissioners to make the initial determination which emails are subject to disclosure, and because of the record concerning the Defendants' prior candor with the Court in this case and in other matters.  *See Fish v. Kobach*, No. 16-2105-JAR-JPO, 2017 WL 3149289, at *3 & n.27 (D. Kan. July 25, 2017) (describing Mr. Kobach's "pattern" of "misleading the Court about the facts and the record").  At a minimum, Defendants' counsel should be directed to take

adequate steps to ensure that the *Vaughn* index includes relevant emails, including deleted emails, from all email accounts used by Commissioners for Commission-related work, and Defendants' second declaration should detail the manner in which any non-federal government email systems were searched.

- *Completeness*:  During the meet and confer, counsel for the Lawyers' Committee advised that the *Vaughn* index should include at least the following details to facilitate an assessment of whether a particular record is subject to Section 10(b):

   o   The sender and recipient(s) and date (if any) of the record;

   o   The record's subject line or document title;

   o   If the subject line or document does not adequately describe the nature of the document, a description of its subject matter; and

   o   For emails and other communications, a description of any attachments.

      In response, Defendants' counsel would not commit to providing these basic details.  Although it is unclear precisely what information Defendants intend to log on the *Vaughn* index, it is clear that neither the Lawyers' Committee nor the Court will be able to determine if logged documents are subject to disclosure if Defendants are permitted to omit such basic information.  If Defendants' counsel believed they would be unable to prepare a proper *Vaughn* index in the allotted time, they should have so advised the Court at the August 30 hearing.  Instead, they agreed to the Court's proposal without qualification.  08/30/17 Hr'g Tr. 18.  Defendants thus should be directed to employ resources sufficient to complete a proper *Vaughn* index, including the details set forth above, by the parties' agreed deadline of September 29.

- *Date Range*:  The Lawyers' Committee believes that the index should include any documents related to the Commission at any time since this Administration took office, because Vice Chair Kobach stated in separate litigation that he met with President Trump during the Presidential transition period "to advise the President . . . on matters *within the purview of the Commission*."  *Fish v. Kobach*, 16-cv-02105 (D. Kan. July 28, 2017), ECF No. 376 at 11 (emphasis added).

   With respect to the second declaration, which must detail "the steps that the Commission has taken and will take to identify documents for collection and potential disclosure," 08/30/17 Order at 1, the Lawyers' Committee has suggested that Defendants include in the declaration:

- Names and roles of all individuals involved in these efforts;

- Names of custodians identified;

5

- Details regarding the existence of records in non-federal government systems, *e.g.*, non-federal government issued email accounts, PDAs, etc.; and

- Details (*e.g.*, timing, individuals involved, etc.) concerning any specific efforts to:

  o Advise custodians of preservation/retention obligations under the PRA, FACA, litigation holds, etc.

  o Identify or collect records maintained in federal government files or systems;

  o Identify or collect records maintained in non-federal government files or systems; and

  o Identify, collect, or disclose records that are prepared for or otherwise relate to the Commission's meetings

Defendants declined to provide any details regarding what will be included in this declaration, but particularly given Commissioners' apparent use of personal email, the Lawyers' Committee respectfully requests that the Court provide further clarification on these issues.

## B.     Defendants' Positions

Defendants' respectfully disagree with plaintiff's characterization of the September 1, 2017, meet-and-confer call.  Defendants were prepared to discuss the two items the Court expected for this status report: a proposed schedule and the timing of document disclosures for the Commission's next meeting.  *See* Order, ECF No. 28.  Defendants also discussed other substantive issues to the extent such discussion would be productive; however, the Court did not require the resolution of all potentially outstanding issues regarding the production of these two declarations and a *Vaughn*-type index less than forty-eight hours after this Court entered its order.  Defendants do not, moreover, recall making any definitive statements as to email addresses being used by non-federal commissioners, nor is the email account relevant for determining whether records are subject to Section 10(b).  *See* Tr. at 23:2-9.  Appropriate litigation holds are in place regardless of document location.

6

Defendants state that their commitment to the September 29, 2017 deadline is conditioned on their expectation that the *Vaughn*-type index may group some documents into categories (for example, emails among staff; public comments received and posted online) and address those groups on a categorical basis.  Defendants also understand that they will be collecting and indexing documents created on or after May 11, 2017, the date of the Executive Order creating the Presidential Advisory Commission on Election Integrity ("Commission").  Notwithstanding the reference in the Court's Order to a "document-by-document" analysis, the Court's statements at the August 30 hearing contemplated that some documents may be addressed on a categorical basis.  For example, at the hearing, the Court explained that the point of the index was to "get the universe of the *types* of documents *or* the specific documents" at issue.  Transcript at 27 (emphasis added).  The Court also expressed the hope that there are "some categories that might not be necessary to even be discussed" when the parties conferred about the issues.  *Id.* at 28; s*ee also id.* at 24 ("there probably are categories that are not going to be covered").

An approach that allows for some categorical descriptions makes sense here.  Unlike under the Freedom of Information Act ("FOIA"), where a search is conducted for all documents responsive to a request for records, the Federal Advisory Committee Act ("FACA") does not require the production of every conceivable record.  *See Nat'l Anti-Hunger Coalition v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C.) ("[S]urely Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through which recommendations are evolved . . . ."), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983).  Administrative emails among Commission staff, for example, are not subject

7

to FACA Section 10(b).  *See* 5 U.S.C. app 2 § 10(b) (requiring only materials that "were made available to or prepared for or by each advisory committee" be made available to the public); 12 U.S. Opp. Off. Legal Counsel 73, 75 (1988) (section 10(b) does not apply to material produced by staff members, staffing entities, or subcommittees, "so long as the material was not used by the committee as a whole").  Accordingly, little purpose is served by individually listing hundreds of administrative emails among staff.  Identifying a category of such emails should be sufficient to enable the Court to make the legal determination about whether that category of documents is or is not subject to Section 10(b).  *See Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) (approving categorical-type *Vaughn* index for documents to which a common-law right of access applied, with a document-by-document approach only "[i]f there is any legitimate question as to any or all of the categories").  Because of the number of potential emails, in the absence of some categories, defendants would require a substantial amount of additional time in which to produce a document-by-document index.

Defendants further state that they intend to follow the instructions and guidance set forth in the Court's August 30, 2017, with regard to the content of the declarations.  Defendants do not believe it is necessary to impose further requirements or structure on the declarations at this juncture.  Defendants will endeavor to make the declarations as detailed as possible.

Dated:  September 5, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

*/s/Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
Ezra D. Rosenberg (D.C. Bar # 360927)
Marcia Johnson-Blanco (D.C. Bar # 495211)
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW
Washington, DC 20005
Telephone: +1 202.662.8600
Facsimile: +1 202.783.0857
erosenberg@lawyerscommittee.org

_/s/ John A. Freedman_
John A. Freedman (D.C. Bar No. # 453075)
Robert N. Weiner (D.C. Bar # 298133)
David J. Weiner (D.C. Bar # 499806)
R. Stanton Jones (D.C. Bar # 987088)
Daniel F. Jacobson* (D.C. Bar # 1016621)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: +1 202.942.5000
Facsimile: +1 202.942.5999
John.Freedman@apks.com

Kathryn W. Hutchinson
ARNOLD & PORTER KAYE SCHOLER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844
Telephone: +1 213.243.4000
Facsimile: +1 213.243.4199

_Counsel for Plaintiff Lawyers' Committee for
Civil Rights Under Law_

*D.D.C. application pending