# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW,

       Plaintiff,

v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY, *et al.*,

       Defendants.

Civil Action No. 1:17-cv-1354 (CKK)

## <u>FOURTH DECLARATION OF ANDREW J. KOSSACK</u>

I, Andrew J. Kossack, declare as follows:

As stated in my prior declarations, ECF Nos. 15-1 & 23-1, I am the Executive Director and Designated Federal Officer for the Presidential Advisory Commission on Election Integrity ("Commission"), and a full-time government employee in the Office of the Vice President.  My duties include providing administrative and staff support to the Commission and its members, approving or calling meetings of the Commission, attending meetings, and related responsibilities.  I submit this declaration in response to the Court's Order of August 30, 2017 (ECF No. 28), directing submission of a "declaration detailing the steps that the Commission has taken and will take to identify documents for collection and potential disclosure."  This declaration is based on my personal knowledge and upon information provided to me in my official capacity as the Commission's Designated Federal Officer responsible for the administration of the Commission.

Preservation of Commission Records

1.     The Commission was established by Executive Order on May 11, 2017, and its

last two members were announced on July 10, 2017.  Commissioners John Kenneth Blackwell,

Matthew Dunlap, David Dunn, William Gardner, Kris Kobach, Connie Lawson, Christy

McCormick, and Mark Rhodes were formally appointed on June 23, 2017.[1]  Commissioners

John Christian Adams, Alan King, and Hans von Spakovsky were formally appointed on July

11, 2017.  All Commissioners were sworn in a few minutes prior to the Commission's first

meeting, on July 19, 2017.  That morning of July 19, 2017, Commissioners received training on

the Federal Advisory Committee Act (FACA) and Presidential Records Act (PRA), using a

PowerPoint presentation supplied by the General Services Administration (GSA), the agency

charged with interpreting FACA.   During the training, GSA counsel read and explained the

statutory definition of a Presidential record and advised Commissioners either to copy my email

address or the Commission staff email account on all emails meeting that definition, or to

forward such emails to a Commission staff account within 20 days.  I advised Commissioners to

contact me if they had questions regarding the Presidential Records Act so that I could provide

them with additional guidance from GSA.  I do not recall any Commissioner requesting

additional guidance following the briefing.  My emails, and all records in the Office of the Vice

President, are subject to preservation under the PRA.

2.     On July 3, 2017, a lawsuit was filed seeking to enjoin the Commission's first

scheduled meeting.  Shortly thereafter, I was advised of the need to retain records related to the

lawsuit, and told that formal litigation hold instructions would be forthcoming.  I received the

formal litigation hold instructions on August 4, 2017, addressing six different lawsuits, and

---

[1] Luis Borunda was appointed to the Commission on June 23, 2017 and resigned on July 3, 2017.

emailed the instructions (and all the complaints) to each Commission member on August 7,
2017.  This litigation hold letter generally advised all Commission members that, although many
of the relevant records were being preserved under the PRA, they had a duty to retain all
information potentially relevant to six pending lawsuits during the pendency of those lawsuits.
The letter instructed the Commission members to retain and preserve all relevant paper
documents, email communications, electronically-stored information including metadata, and
any other relevant materials and data concerning, but not limited to, the following topics: (1) the
motivation and reasons for creating the Commission; (2) the Commission's establishment,
including the appointment of its members; (3) the Commission's operation; (4) the
Commission's collection, dissemination, use, and storage of voter information; and (5) the
Commission's work, including any documents, emails, electronically-stored information, or
tangible items created or received by the Commission's members in carrying out the
Commission's mission regardless of whether those materials are disseminated to the
Commission as a whole or considered to be subject to Section 10(b) of FACA.

3.      On August 7, 2017, I similarly sent a litigation hold letter to Commission staff
and all other staff within the Office of the Vice President (OVP), even if such OVP staff were
not assisting with Commission work and despite the fact that all OVP staff records were already
being preserved under the Presidential Records Act.

4.      On August 30, in conjunction with a letter advising Commissioners to submit
meeting materials in advance of the September 12, 2017 meeting, I re-sent copies of the
litigation holds to all the Commission members as a reminder of their preservation obligations.

Collection of Records

5.      On September 12, 2017, in conjunction with the Commission meeting occurring on that date in Manchester, New Hampshire, I asked each Commission member present at the meeting to identify and collect all documents which he or she had created, gathered, received, or used in connection with the Commission.  At that time, I provided them with written instructions and a checklist identifying what should be collected.  The written instructions specifically directed the Commissioners to review any email accounts they used to conduct Commission business, as well as other forms of electronic communication, including text messages and Facebook and other social media.  The Commission members were instructed to include all Commission-related communications to or from (1) Commission members, including the Chair and Vice-Chair; (2) Commission staff; and (3) third parties.  A copy of the "checklist" that I provided is attached.

6.      I also specifically directed Commission members to include any documents that they did not share with other Commission members, including draft documents, research, personal notes, and documents received from members of the public related to Commission work.  To ensure that nothing was overlooked, I included an instruction to collect any other documents that may not have been otherwise enumerated that were received or gathered in the Commission member's capacity as a Commission member.

7.      I also included a certification for each Commission member to sign attesting that he or she had completed the necessary searches.  I provided a Federal Express envelope to each member present at the September 12, 2017, meeting to use to send their materials to me or directly to Department of Justice counsel.  The next day, I emailed these same instructions to Alan King and Mark Rhodes, who were not present at the New Hampshire meeting.

4

8.     I provided the same instructions regarding the identification and collection of documents to Commission staff, including myself.  To facilitate my own review, I requested that our technical staff mirror my official email account and copy it to a stand-alone computer.  In that way, Department of Justice attorneys were able to conduct their own search of my emails. As of September 28, 2017, I had more than 7,000 emails in my Outlook account.  The other full-time Commission staff member similarly searched his email account and provided to Department of Justice counsel copies of all messages on which I was not copied.  These searches were all conducted during the weeks of September 18 and 25.  There were also in excess of 43,000 emails, mostly public comments, in the Commission staff email box.

9.     Each of the aforementioned Commission members complied with my instructions and provided the documents they collected to either myself or to DOJ counsel, other than certain documents the members noted they were retaining.  They also executed the certification attesting to having completed the search and collection of documents as requested.  I understand that the documents that some members retained consisted of bulky paper files, such as paper correspondence received from interested members of the public, documents which were already posted on the Commission webpage, and personal notes, as well as some administrative text messages.

Collection of Documents Going Forward

10.     Going forward, I have reminded Commission members that they should copy or forward to my email address or another Commission staff email address all communications related to Commission business, regardless of whether or not any disclosure obligation attaches. The litigation holds regarding all other documents also remain in effect, and members should be retaining all records accordingly.  For future meetings, I intend to ask Commission members

5

(and any guest presenters who may attend) to provide their prepared materials to Commission

staff in advance of meetings so that such materials can be made available to the public before or

at the meeting to which they apply.  In addition, Commission staff will continue to post to the

Commission's webpage (or make available for inspection at GSA) all materials subject to section

10(b) unless exempt, *e.g.*, under 5 U.S.C. § 552(b)(6).


        I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge.


***


Executed this 29th day of September, 2017.

Andrew J. Kossack

**ATTACHMENT A**

## Materials Checklist

Please check to confirm that you have searched for the following materials and sent any responsive documents to Andrew Kossack.  If you have any question about whether materials would fall into this category, please include them.

Emails and Electronic Communications: *Please search all email accounts that you have used to send or receive Commission-related e-mails, including personal accounts, as well as other communications, such as text messages, Facebook, and other social media accounts.*

Please collect all e-mails and other written communications that you sent or received to or from:

☐ Commission members, including the Chair and Vice-Chair.

☐ Commission staff.

☐ Third-parties relating to the Commission or its business.

Documents:

Please collect all documents related to the Commission, including:

☐ Documents brought or discussed at the Commission meetings, including documents you did not share with other Commissioners or Commission staff.

☐ Documents prepared, including draft documents, with the potential or actual intention of sharing with the Commission or Commission members.

☐ Documents gathered as part of your work on the Commission, including materials gathered as part of your own research on the topic(s) and potential topics the Commission will examine and/or may potentially examine.

☐ Notes (handwritten or typed) that you prepared or received relating to Commission business, including notes prepared for planned remarks at the July 19 and September 12 Commission meetings.

☐ Documents received from a member of the public related to the Commission.

☐ Any other documents you gathered or received in your capacity as a Commissioner.