**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW,

      Plaintiff,

v.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY; *et al.,*

      Defendants.

Civil Action No. 1:17-cv-1354 (CKK)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE WITH THIS COURT'S AUGUST 30, 2017, ORDER AND FOR
<u>ADDITIONAL APPROPRIATE RELIEF</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 8

I.   DEFENDANTS' DECLARATIONS AND *VAUGHN*-TYPE INDEX COMPLY WITH
     THE COURT'S ORDER AND PROVIDE SUFFICIENT DETAIL FOR THE COURT
     TO ASSESS DEFENDANTS' FORTHCOMING MOTION TO DISMISS. ...................... 8

     A.   Defendants Appropriately Used Categories In Preparing The Index. ................. 10
     B.   Plaintiff's Other Objections To Categorization Are Unavailing. ........................ 13

II.  PLAINTIFF'S SPECULATION THAT THE INDEX IS INCOMPLETE IS WITHOUT
     BASIS, AND IS A COLLATERAL ATTEMPT TO EXPAND THIS SUIT BEYOND
     FACA. ....................................................................................................................... 16

     A.   Defendants Have Complied With Their Preservation Obligations. ...................... 16
     B.   Defendants Conducted A Reasonable And Adequate Search For Commission
          Records. ............................................................................................................. 18

          1.   The Index accounts for Commissioner-to-Commissioner communication. ......... 19
          2.   There is no basis for extending the index to documents created before May 11,
               2017 ............................................................................................................... 20
          3.   Defendants properly searched for and categorized text messages. ...................... 20

CONCLUSION ................................................................................................................... 22

## INTRODUCTION

In compliance with this Court's order, defendants have provided the Court with an extraordinary amount of information about documents collected by the Presidential Advisory Commission on Election Integrity ("Commission").  Defendants have produced a declaration detailing their position on which materials are covered by section 10(b) of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app 2. § 10(b), and why.  In a second declaration, defendants detailed the steps they took to identify documents for collection and disclosure, including requiring Commissioners to search all their emails and other written communications and to certify in writing that they had turned over any relevant materials to the Commission. Finally, defendants created a nearly 800-entry index, which identified, on a document-by-document basis, every email sent or received by each Commissioner, regardless of whether defendants believe those materials are subject to section 10(b).[1]  Defendants are aware of no Presidential commission ever to have undertaken such an endeavor.  This information is more than sufficient to allow the Court "to be able to properly assess Defendants' anticipated arguments, in the form of a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), regarding the availability of mandamus jurisdiction in this action."  Order (Aug. 30, 2017), ECF No. 28.  Accordingly, the appropriate next step is for the Court to set a briefing schedule for defendants' motion to dismiss.

Plaintiff, unsatisfied, has a different view.  It contends that defendants' unprecedented efforts failed to comply with this Court's order.  Not so.  Plaintiff condemns defendants for categorizing a limited set of records – internal emails sent by Commission staff (but *not*

---

[1] The parties agreed that certain administrative emails between Commissioners did not need to be listed separately, and plaintiffs do not challenge this decision.

Commissioners) to others in the Office of the Vice President ("OVP") or the Executive Office of the President ("EOP"), and to a limited number of third parties. However, categorization was appropriate in light of the burden of individually listing staff emails, particularly given the clear precedent indicating that staff emails are not subject to FACA section 10(b), the Supreme Court's admonition that discovery against the Office of the Vice President must be limited, and case law from this Circuit in the Freedom of Information Act ("FOIA") context holding that categorical *Vaughn* indexes are appropriate. Defendants took care to ensure that the categories were sufficiently detailed to enable the Court to determine which materials are subject to section 10(b).

Plaintiff also continues its general assault on the Commission in a manner untethered from section 10(b) or any other claim in its complaint. It faults the Commission's training and document preservation practices during the early summer. Those measures, however, were proper. In any event, while plaintiff repeatedly mentions the Presidential Records Act, this lawsuit is *not* a challenge under that Act, and plaintiff's attempt to bring such a challenge is improper. Plaintiff also speculates that there are Commission records that exist that are not included in the index. It lacks a basis for such speculation. Contrary to plaintiff's statement that the index "contains almost no Commissioner-to-Commissioner communications," the index lists many examples of precisely this type of communication. Moreover, as detailed in his declaration, the Commission's Designated Federal Officer specifically asked Commissioners to collect Commissioner-to-Commissioner communication and each such Commissioner certified that they had done so. Defendants are entitled to rely on these representations from respected public officials.

Plaintiff also claims that the index should include records *prior* to May 11, 2017, when the Commission was created by Executive Order.  But section 10(b) only applies to materials "which were made available to or prepared for or by each advisory committee."  Materials that predate the formation of the Commission cannot meet this standard, and plaintiff offers no authority to suggest otherwise.  Finally, plaintiff faults defendants for failing to physically collect, and adequately search for, text messages.  But this accusation ignores the details of defendants' search.  Defendants specifically asked Commissioners to search for text messages.  Only one Commissioner reported having any text messages related to the Commission, and those text messages – all reported to be administrative matters, like scheduling – were properly identified on the index.  This information is more than sufficient to permit the Court to determine whether section 10(b) applies to these materials.

This Court should reject plaintiff's continued attempts to obtain pre-motion discovery, and should set a briefing schedule for defendants' motion to dismiss.

## BACKGROUND

As the Court is aware, this case has had an accelerated and unusual procedural history. Plaintiff filed its complaint and motion for temporary restraining order and preliminary injunction on July 10, 2017.  *See* Compl., ECF No. 1; Pl.'s Mot. TRO & Prelim. Inj., ECF No. 3. Defendants filed their opposition on July 13, 2017, *see* Mem. Opp'n Pl.'s Mot. TRO & Prelim. Inj., ECF No. 15, and the Court denied the motion on July 18, 2017, *see* ECF Nos. 17 & 18. Plaintiff appealed that same day, *see* Notice of Appeal, ECF No. 19, and filed a motion for discovery by the end of that week, Pl.'s Mot. Status Conf., Ltd. Expedited Disc. & Appropriate Relief, ECF No. 21.  Defendants opposed, *see* ECF No. 24, and the Court held a hearing on August 30.

3

At that hearing, the Court denied the bulk of plaintiff's requests for discovery.  The Court

then turned to the issue of how to adjudicate this case moving forward.  It recognized that, "in

terms of the mandamus jurisdiction . . . it turns on whether the Government agency or official is

violating a clear duty to act, and that relates to, obviously [FACA section] 10(b)."  Tr. Aug. 30,

2017, Hr'g ("Tr.") 13:21-24.  The Court further concluded that "in order to make a ruling [about

the availability of mandamus jurisdiction], I need to have a better understanding of the

Commission's positions on the documents to date as to whether they're subject to 10(b)

disclosure and under what circumstances."  *Id.* at 14:9-14.  To provide that understanding, the

Court ordered defendants to produce: (1) "[a] declaration detailing Defendants' position on what

categories of documents are appropriately included in the universe of documents potentially

subject to disclosure pursuant to FACA section 10(b), and what categories of documents are not

subject to disclosure," (2) "[a] declaration detailing the steps the Commission has taken and will

take to identify documents for collection and potential disclosure," and (3) "[a] *Vaughn*-type

index detailing what specific documents have been collected with respect to the Commission to

date, which of those have been disclosed, and if they have not been disclosed, on what basis."

Order (Aug. 30, 2017), ECF No. 28.  This, the Court concluded, would "permit the plaintiff and

the Court to assess [defendants'] representations regarding their compliance with Section 10(b)

because that's really the issue for me."  Tr. At 16:8-11.  The Court stayed defendants' obligation

to answer or otherwise respond to the complaint pending its receipt and review of the above

materials.  Order (Aug. 30, 2017) at 2.

Pursuant to the Court's order, the parties agreed that defendants would submit these

documents by September 29, 2017, with the defendants stating "that their commitment to this

deadline is conditioned on their expectation that the *Vaughn*-type index may group some

4

documents into categories." Joint Status Report (Sept. 5, 2017) at 1, ECF No. 30. This commitment was based on statements by the Court explaining that the point of the index was to "get the universe of the types of documents or the specific documents," Tr. at 28:6-7; Joint Status Report (Sept. 5, 2017) at 7, as well as authority indicating that identifying certain categories of materials was sufficient to enable the Court to make a legal determination of whether that category of materials is or is not subject to Section 10(b), Joint Status Report (Sept. 5, 2017) at 8 (citing *Wash. Legal Found v. U.S. Sentencing Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) (approving categorical-type *Vaughn* index for documents to determine whether a common law right of access applied, with a document-by-document approach only "[i]f there is any legitimate question as to any or all of the categories")). The parties also disagreed on whether the index should include materials going back to the date the Commission was created, May 11, 2017, which was defendants' position, or back to the beginning of the Administration, which was plaintiff's position. *See* Joint Status Report (Sept. 5, 2017) at 5, 7.

The parties continued to meet-and-confer, and on September 25, 2017, they filed another joint status report. There, they agreed that defendants may group four categories of materials (including administrative emails), Joint Status Report (Sept. 25, 2017), at 1-2, ECF. No. 32, and that defendants would list separately seven categories of materials, including substantive communications among or between Commissioners, *id.* at 2. The parties continued to disagree on whether staff emails that were not exchanged with Commissioners needed to be separately listed, *id.* at 3, 5, as well as the date range for the index, *id.* at 4, 6.

Defendants timely filed the required documents on September 29, 2017. *See* Notice of Filing, ECF No. 33. First, defendants submitted the third declaration of Andrew J. Kossack, the Commission's Designated Federal Officer ("DFO"), which detailed the Commission's position

on which materials were and were not subject to FACA section 10(b).  Third Declaration of

Andrew J. Kossack ("Third Kossack Decl."), ECF No. 33-1.  The document set out the

Commission's interpretation of section 10(b)'s disclosure requirements.  *Id.* ¶¶ 3-9.  That view

was informed by legal advice from the General Services Administration ("GSA"), an opinion

from the Office of Legal Counsel, pertinent case law, and a review of how prior presidential

advisory committees have been administered, including President Obama's Presidential

Commission on Election Administration.  *Id.*  The declaration also identified ten categories of

materials that it viewed as subject to section 10(b), *id.* ¶ 11, and twenty-five categories of

materials that it viewed as not subject to section 10(b), as well as a rationale for why materials

within each of these latter categories did not need to be disclosed, *id.* ¶ 25(a)-(y).

Second, defendants submitted a declaration detailing the Commission's efforts to identify

and, where necessary, collect materials related to the Commission and its activities.  Fourth

Declaration of Andrew J. Kossack ("Fourth Kossack Decl."), ECF No. 33-2.  The declaration

discussed the general preservation training given to the Commission, including training the

Commissioners received pursuant to FACA and the Presidential Records Act, *id.* ¶¶ 1, 4, as well

as the notifications sent regarding the litigation hold, *id.* ¶¶ 2-3.  The declaration also described

the process used to search for and gather materials in connection with preparing the *Vaughn*-type

index.  Notably, each Commissioner present at the September 12, 2017, Commission meeting

was provided with written instructions directing him or her  to "search all email accounts [he or

she has] used to send or receive Commission-related emails, including personal accounts, as well

as other communications, such as text messages, Facebook, and other social media accounts."

*Id.* ¶ 7 & Ex. A.  The day after the meeting, identical instructions were provided by email to

Commissioners Alan King and Mark Rhodes, who were not present at the meeting on September

12, 2017.  *Id. ¶* 7.  The Commissioners were specifically "instructed to include all Commission-related communications to or from (1) Commission members, including the Chair and Vice Chair; (2) Commission staff; and (3) third parties."  *Id.* ¶ 5.  The Commissioners were also instructed to collect any documents that they did not share with other Commissioners.  *Id.* ¶ 6.

Each of these Commissioners was also provided a checklist of the required documentary material, Fourth Kossack Decl. at Ex. A, and each Commissioner executed a written certification attesting that he or she had completed the search and collection of materials.  *Id.* ¶ 9.  The Commission's Designated Federal Officer also directed that his official email account be copied to a stand-alone computer, so that Department of Justice ("DOJ") attorneys were able to conduct their own review of his emails.  *Id.* ¶ 8.  The Commission's other full-time staff member searched his email account and provided to DOJ counsel copies of all messages where Mr. Kossack was not copied.  *Id.*  The declaration further explained the Commission's plans for document retention and disclosure moving forward.  *Id.* ¶ 10.

Finally, defendants submitted a forty-one page index, with nearly 800 separate entries. Index, ECF No. 33-3.  With certain exceptions agreed to in advance by the parties, Joint Status Report (Sept. 25, 2017), this index individually enumerated all of the materials the Commission views as subject to section 10(b), Index Nos. 3-129.  Defendants also individually enumerated materials they believe are not subject to section 10(b), including all emails sent by the Commission DFO to the Commissioners, *id.* Nos. 131-159, as well as emails and other materials sent to, from, or possessed by each Commissioner, *id.* Nos. 161-630.[2]  The index also separately listed materials sent to or from panelists for the Commission's September 12, 2017, meeting, *id.*

---

[2] Pursuant to an agreement between the parties, defendants did not individually list certain administrative emails between Commission staff and Commissioners.  *See* Joint Status Rpt. (Sept. 25, 2017) at 2; *see also*, *e.g.*, Index Nos. 189, 207.

Nos. 632-679, and communications between the Commission and OVP staff and other

government entities, *id.* Nos. 681-753.[3]  Finally, the index identified thirty-five individually

listed subcategories of internal materials (*i.e.*, communications among Commission staff, OVP

staff, and/or EOP staff), *id.* Nos. 755-790, and fifteen subcategories of miscellaneous

communications with third parties, *id.* Nos. 790-807.

      The parties conferred again after the submission of the above materials.  Plaintiff

identified only two entries that it stated were too vague to allow for a proper assessment of

whether section 10(b) applied.  *See* Letter from Defendants to Plaintiffs (Oct. 11, 2017), ECF

No. 35-2 (citing Index Nos. 544 & 703).  Defendants supplied additional information on these

entries.  *Id.*  The parties continue to disagree over the categorization of certain Commission staff

materials, the date range of the index, and whether the Commission's collection efforts were

adequate.  *See* Mem. Law Support Pl.'s Mot. Compel Compliance Ct.'s Aug. 30, 2017, Order &

Additional Appropriate Relief ("Pl.'s Mot. Compel"), ECF No. 35-1.

## **ARGUMENT**

**I.**     **DEFENDANTS' DECLARATIONS AND *VAUGHN*-TYPE INDEX COMPLY WITH THE COURT'S ORDER AND PROVIDE SUFFICIENT DETAIL FOR THE COURT TO ASSESS DEFENDANTS' FORTHCOMING MOTION TO DISMISS.**

      In compliance with this Court's order, defendants have provided an extraordinary amount

of information about the Commission's views on the applicability of FACA section 10(b), its

document collection activities, and the materials created, sent, or received by Commissioners and

staff members.  This information will allow "Plaintiff and the Court to be able to properly assess

---

[3] These documents were listed individually by email and/or email chain, with the exception of staff discussions with individual states about the mechanics of transferring data, Index No. 753, which were listed by category.

Defendants' anticipated arguments, in the form of a motion pursuant to Federal Rule of Civil

Procedure 12(b)(1), regarding the availability of mandamus jurisdiction in this action."  Order

(Aug. 30, 2017).  Furthermore, defendants' actions have complied with the Court's direction.

*Compare* Fourth Kossack Decl. at Ex. A (requiring Commissioners to review all "e-mails and

other written communications") *with* Order (Aug. 30, 2017) at 2 ("Furthermore, given the broad

scope of the *Vaughn*-type index, Defendants' search for relevant materials must be

correspondingly broad, and should include all mediums through which Commission members

have engaged in work for the Commission."); *also compare* Index (identifying documents

created, obtained, or sent by each Commissioners) *with* Order (Aug. 30, 2017) at 2 ("To the

extent a document was created or obtained by a Commission member in the course of his or her

work for the Commission, it should be included in the index.").  The index and its descriptions

are "sufficiently broad and detailed to permit the Court to ascertain why a Commission member

created or obtained a certain document," *id.* at 2, and, indeed, plaintiff does not contest

otherwise.[4]

Accordingly, the proper next step is not to allow plaintiff's ever-changing quest for

discovery, but for defendants to file, and the parties to brief, a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(1) for lack of mandamus jurisdiction.  *See* Order (Aug. 30, 2017);

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) ("To show entitlement to

mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the

government agency or official is violating a clear duty to act, and (3) that no adequate alternative

---

[4] Plaintiff raised concerns with only two entries, to which defendants provided additional information.  *See* Letter from Defendants to Plaintiffs (Oct. 11, 2017).  Plaintiff has not raised any other challenges to the adequacy of the index with respect to individually identified entries. *See generally* Pl.'s Mot. Compel.

remedy exists.  These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction.") (internal citations omitted).  Defendants have identified the materials they believe are covered by section 10(b), *see* Third Kossack Decl.; Index, have provided explicit and precise explanations as to the basis for those views, *see* Third Kossack Decl., and have described specific documents in a way that will allow the Court to know how the Commission's interpretation of section 10(b) has "been actually applied in terms of documents that you have up to that point," Tr. at 16:5-7; Index.

Dispositive briefing will allow defendants to further explain their views on the scope of section 10(b), illustrated, as the Court ordered, by concrete examples and detailed explanation. *See* Order (Aug. 30, 2017).  It will allow plaintiff an opportunity to contest the Commission's views directly, rather than, as now, through oblique mentions in a discovery motion.  *See, e.g.*, Pl.'s Mot. Compel at 4.  And most importantly, it will provide the Court an opportunity to rule upon the propriety of the Commission's approach to section 10(b), confirming whether it has mandamus jurisdiction, and to provide clear guidance to the Commission moving forward.

In sum, defendants have complied with this Court's August 30, 2017, order, and plaintiff's specific objections do not counsel otherwise.

## A.    Defendants Appropriately Used Categories In Preparing The Index.

As discussed above, defendants appropriately used a limited number of specific sub-categories in the Index, notably internal communications among Commission staff, OVP staff, and EOP staff (Nos. 755-790), and miscellaneous communications between Commission staff and third parties (Nos. 792-807).  The use of categories was appropriate for these materials for several reasons.

First, separately listing all substantive internal emails would impose a significant burden on the defendants, who would have to separately list thousands of emails by, from, and among staff members within the Commission, OVP, and EOP.[5]  Plaintiff claims that "[t]here is no reason to believe that the volume of individual records in these categories is so enormous that Defendants are unable to review and list them."  Pl.'s Mot. Compel at 5.  But a Presidential commission should not be put to the intrusion and burden of individually indexing thousands of emails that, for purposes of determining their status under section 10(b), are materially indistinguishable from one another.  Furthermore, to impose such a task now, *after* those offices have already completed such an extraordinary exercise, and before this Court has ruled, in the context of a still-forthcoming dispositive motion, on whether these materials even categorically fall within section 10(b)'s ambit would be an especially unwarranted burden.

Moreover, the burden on the government is particularly concerning in this context. Plaintiff seeks internal OVP and EOP communications, and as the Supreme Court has recognized (also in a case involving the Office of the Vice President) "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated."  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386 (2004).  Indeed, the materials which plaintiff seeks are subject to the Presidential Records Act, and thus not subject to disclosure until after the end of the Administration.  44 U.S.C. § 2207; *id.* § 2204(c).  Plaintiff suggests that section 10(b) allows it to subvert this requirement and demand individual listing of all of these materials – which is contrary to case

---

[5] Plaintiff is inconsistent as to whether it seeks individual listing of all "communications with third parties as well as internal Commission communications or documents," Pls.' Mot. Compel at 4, or whether it is only seeking individual listing of the seventeen categories of documents specifically referenced in its motion, *id.* at 3-5.  In either event, the burden would be considerable, and unwarranted.

law, an OLC opinion, and consistent past practice by multiple Administrations, all demonstrating that staff emails of the sort at issue here are not subject to section 10(b). *See* Third Kossack Decl. ¶¶ 3-4 (citing Disclosure of Advisory Committee Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73, 75 (1988) ("The courts and this Office have construed the concept of advisory committees established or utilized by the President or an agency to preclude section 10(b)'s application to the work prepared by a staff member of an advisory committee . . . so long as the material was not used by the committee as a whole."); *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983)). Plaintiff should not be allowed to compel such information until, at a minimum, the Court has determined that the Commission's views on the applicability of section 10(b) to this material are clearly wrong.

Second, the Commission's categorical treatment of a limited subset of documents is consistent with precedent in related contexts (recognizing, of course, the unprecedented nature of this exercise). In *Washington Legal Foundation v. U.S. Sentencing Commission*, 17 F.3d 1446 (D.C. Cir. 1994), upon which this Court has relied, *see* Tr. 17:11-20, the court held that before ruling that a request for records was outside the scope of the disclosure right (in that case, the common law right to public records, here, FACA section 10(b)), the district "court should have analyzed each *category* of document requested and, if a category is reasonably likely to contain [documents subject to disclosure], each document within such category, to determine whether any of those documents might in fact be subject to [disclosure]." *Id.* at 1452 (emphasis added). This ruling clearly contemplates the use of categories, particularly when several of them may be excluded from disclosure. Similarly, in the FOIA context from which the *Vaughn*-index emerged, categorical approaches are generally acceptable. *See, e.g.*, *Judicial Watch, Inc. v. Food*

*& Drug Admin*, 449 F.3d 141, 147 (D.C. Cir 2006); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 166 (D.D.C. 2011). Here, the Commission provided specific descriptions of the subcategories involved. *See, e.g.*, Index No. 780 ("internal discussions about subjects for potential Commission report"); *id.* No. 776 ("internal discussions over press releases after litigation events"). These descriptions are sufficient to allow the Court to determine whether documents within these categories are subject to section 10(b).

Finally, plaintiff argues that defendants, by applying a categorical approach to a limited subset of documents, are attempting to "unilaterally decide the merits of this case." Pl.'s Mot. Compel at 6. Not so. Defendants are not, for example, resting on a blanket declaration of "staff emails." Instead, they have provided detailed sub-categories listing the specific topics covered by those emails so the Court may evaluate with confidence defendants' determinations while appropriately minimizing burden in compliance with this Circuit's precedent.

## B.      Plaintiff's Other Objections To Categorization Are Unavailing.

While plaintiff focuses the bulk of its motion on the simple fact that defendants categorized certain documents, it also raises several specific objections. Those objections are unavailing.

Plaintiff argues that defendants inconsistently treated "communications about data collection and analysis," individually listing some communications and not others. *See* Pl.'s Mot. Compel at 3 (listing Index Nos. 174, 370, 411, 418, 419, 421, 464, 473, 588, 634, 637, 746, 748). There was no such inconsistency: defendants' decision was based on the author or recipient of the document, not the subject. The listings plaintiff refers to involved either communications with Commissioners, all of which were individually identified (with certain exceptions already explained), communications with panelists for the September 12 meeting,

which plaintiff specifically asked be listed during the meet-and-confer, or communications with federal agencies.  *See* Order (Aug. 30, 2017) at 2 ("To the extent a document was created or obtained by a Commission member in the course of his or her work for the Commission, it should be included in the index.").  All of these were categories of materials that the parties had agreed would be treated individually.  Accordingly, there is no such inconsistency.[6]

Second, plaintiff complains that defendants inconsistently categorized records more generally, stating that the index, for example, lists individual emails between Commission staff and U.S. government agencies, but categorized emails between Commission staff and other third parties.  Pl.'s Mot. Compel at 2-3.  However, defendants made decisions about what documents to categorize based on the expected volume of materials and the limited amount of time available to prepare the index.  Moreover, defendants should not be faulted for providing *more* information in certain contexts than was necessary (*i.e.*, for providing individualized listing of each contact with other federal agencies when these communications constituted staff materials).

Third, plaintiff contends, for the first time, that certain categories are too vague.  *See* Pl.'s Mot. Compel at 6.  Defendants disagree.  Plaintiff had the opportunity to request clarification during the meet-and-confer process, which it declined to do, even though it requested – and received – clarification on other entries.  *See* Letter from Defendants to Plaintiffs (Oct. 11, 2017).  To the extent there are entries that are, in fact, too vague to allow the Court to determine whether the materials within the category are subject to section 10(b), the proper remedy is for

---

[6] Plaintiff makes the same argument about inconsistent treatment with relation to "internal" communications and discussions of the Commission's previous meetings.  *See* Pl.'s Mot. Compel at 4 (citing Index Nos. 165, 434, 459, 543); *id.* (citing Index Nos. 153, 155-57, 186, 280, 284, 293, 308, 376, 377, 390, 393, 428, 483, 635).  Again, however, those communications were individually listed *because they were exchanged with individual Commissioners*, or, in the case of document No. 635, an individual panelist and Commission staff.

defendants to provide further clarification of these entries, not to require document-by-document review, particularly before determining whether the category is even subject to section 10(b).

Finally, plaintiff points to certain materials related to the July 19 meeting, and claims that those materials should have been disclosed. Pl.'s Mot. Compel at 7. As an initial matter, this appears to be a substantive claim that these materials are subject to section 10(b), not a claim that the index is inadequate – which is all the more reason why the appropriate next step is to proceed to consideration of defendants' forthcoming motion to dismiss. But in any event, these materials are not subject to section 10(b). The documents plaintiff identifies consist of non-substantive cover emails that were used to send Commission materials, such as the agenda, that *were* disclosed (Index Nos. 140, 143), a cover email by a Commissioner forwarding materials to be shared at the meeting, where the underlying materials have been released (Index No. 172), personal notes prepared by individual Commissioners that were not shared with the Commission (Index Nos. 255, 272, 518, 547, 593), an email chain between Vice Chair Kobach and Commission staff regarding his opening statement (Index No. 439), internal staff deliberations and/or discussions with GSA (Index Nos. 730, 731, and 770), and a White House press release about the July 19, 2017, meeting (Index No. 441).[7] Plaintiff does not assert that the declaration and index are inadequate with relation to these documents.

---

[7] Plaintiff also cites to Index No. 549, which is an email exchange about a media appearance, exchanged between Commissioners Blackwell and McCormick, and a producer, dated July 20 and July 21, 2017. Plaintiff does not explain how this record relates to the July 19 meeting.

## II.   PLAINTIFF'S SPECULATION THAT THE INDEX IS INCOMPLETE IS WITHOUT BASIS, AND IS A COLLATERAL ATTEMPT TO EXPAND THIS SUIT BEYOND FACA.

The remainder of plaintiff's motion constitutes speculation that the Index is incomplete. This speculation is without basis, and constitutes a collateral attempt to expand this suit beyond the requirements of FACA section 10(b), and to bring an (improper and unpled) challenge under the Presidential Records Act.  This attempt should be rejected.

### A.   Defendants Have Complied With Their Preservation Obligations.

Contrary to plaintiff's suggestions, defendants have complied with their preservation requirements.  As explained in the Fourth Kossack Declaration, on the morning before the Commission's first meeting, Commissioners received training from GSA on FACA and the Presidential Records Act.  Fourth Kossack Decl. ¶ 1.  "During the training, GSA counsel read and explained the statutory definition of a Presidential record and advised Commissioners either to copy [Mr. Kossack's] email address on all emails meeting that definition, or to forward such emails to a Commission staff account within 20 days." *Id.*  Mr. Kossack asked Commissioners to contact him if they had any questions, *id.*, and has reiterated to "Commission members that they should copy or forward to my email address or another Commission staff email address all communications related to Commission business, regardless of whether or not any disclosure obligation attaches," *id.* ¶ 10.[8]  Plaintiff complains that this training was not issued until several months after the Commission was created by Executive Order, Pl.'s Mot. Compel at 11, but the Commission did not hold its first meeting until the day of the training, and plaintiff provides no

---

[8] Plaintiff questions whether this statement is accurate.  It cites to a GSA PowerPoint, and says that this document "contains no discussion of the need to take these [preservation] steps, or of 44 U.S.C. § 2209 at all." Pl.'s Mot. Compel at 11.  But this does not mean that the members were not orally informed of their obligations.  Nor does the fact that a Commissioner "stated that he received no directive on the need to take these steps to properly preserve emails," *id.*, mean that such discussion did not occur.

authority for the proposition that member training must happen immediately upon the creation of the Commission.

Defendants have also complied with their litigation hold obligations.  The Commission was advised orally of the need to retain records related to the lawsuits shortly after the first lawsuit was filed, received formal litigation hold instructions on August 4, 2017, which addressed six different lawsuits, and emailed those instructions to each Commissioner on August 7, 2017.  Fourth Kossack Decl. ¶ 2.  These instructions were timely, particularly in light of the FACA training which occurred on July 19, 2017, only a week after this lawsuit was filed.

In any event, contrary to plaintiff's apparent suggestion, *see* Pl.'s Mot. Compel at 9, this is not a lawsuit challenging the Commission's compliance with the Presidential Records Act, which plaintiffs have not pled and where they would likely not state a claim for justiciability reasons.  *See, e.g.*, *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) ("We conclude that permitting judicial review of the President's compliance with the [Presidential Records Act] would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns.  We therefore hold that the [Presidential Records Act] is one of the rare statutes that does implicitly preclude judicial review.").  Plaintiff's attempt to bootstrap a Presidential Records Act challenge into a FACA section 10(b) claim is without merit, and should be rejected.

Finally, even assuming that defendants' earlier preservation instructions were inadequate – and they plainly were not – those instructions have nothing to do with the search for materials in response to *this order*, which occurred in September 2017, and involved an entirely different set of instructions given to the Commissioners, as explained in the Fourth Kossack Declaration,

and with which plaintiff broaches no quarrel.  Accordingly, plaintiff has not shown how any

supposed preservation failures implicate the completeness of this index.

### B. Defendants Conducted A Reasonable And Adequate Search For Commission Records.

Plaintiff has provided no basis for concluding that defendants did not conduct an

adequate search for Commission records.  As discussed in the Fourth Kossack Declaration, the

Commission conducted a thorough and appropriate collection of records to comply with the

Court's order.  Fourth Kossack Decl. ¶¶ 5-9.  After receiving the written search instructions, each

Commissioner certified that he or she complied with the Commission's directive to search his or

her email and social media accounts, paper files, and text messages for materials relating to the

Commission.  *Id.* ¶ 9.  Plaintiff's contention that further searching is necessary is, therefore,

baseless.[9]  To justify further searching, plaintiff speculates that certain categories of additional

documents *should* exist.  But it lacks a basis for this conclusion.

---

[9] This conclusion is not affected by the fact that Commissioner Gardner recently sent to counsel a number of additional communications relating to the Commission that had previously been inadvertently overlooked.  These materials fall within the categories of documents already enumerated in the index and indeed, are similar to many documents already categorized for Commissioner Gardner.  *See* Index Nos. 263-318.  These documents include: (1) emails from and with various reporters and media outlets seeking interviews and statements; (2) emails and news releases relating to Gardner's official position as Secretary of State of New Hampshire; (3) an email from an advocacy organization providing a link to a petition for Commissioner Gardner's resignation from the Commission; (4) emails from New Hampshire state officials regarding the September 12 meeting; and (5) two message slips recording phone messages received from the public.  This additional material does not alter the conclusion that a reasonable search was conducted.  These additional materials, most of which are unanswered emails received, do not relate to the substance of the Commission's work, are not in the categories of materials that plaintiff wishes existed, and do not undermine the reasonableness of the initial searches.  *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (holding that, in the FOIA context, the court examines "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant"); *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (also in the FOIA context, stating "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed").  To

### 1.      The Index accounts for Commissioner-to-Commissioner communication.

Plaintiffs focuses on the fact that the index allegedly "contains almost no Commissioner-to-Commissioner communications," and uses this as a justification for its claim that the index is inadequate.  Pl.'s Mot. Compel at 12.  But the index *does* reflect such communications.  Moreover, the Commissioners were specifically asked to collect such material, and they signed a certification indicating that they had done so.  Accordingly, the Commission's treatment of the index properly accounts for these materials.

First, contrary to plaintiff's claim, the index contains numerous Commissioner-to-Commissioner emails.  *See, e.g.*, Index Nos. 168, 171, 175, 178, 180, 199, 201, 295, 357, 359, 360, 361, 363, 367, 373, 379, 387, 418, 421, 436, 460, 474, 496, 549, 561, 562, 578, 587, 588, 598.  Plaintiff speculates that it is "not plausible" that there were not more emails, Pl.'s Mot. Compel at 12, but it does not explain why.  After all, the Commission has had but two meetings.  Further, the instructions provided to the Commissioners specifically asked them to collect "all e-mails and other written communications that you sent or received to or from: Commission members, including the Chair and Vice Chair," and every member certified that they had done so, Fourth Kossack Decl. Ex. A. & ¶ 9.  Plaintiff's speculation that the Commissioners have not complied with their representations is unsupported and should be rejected.  Moreover, the fact that the Commissioners *did* include Commissioner-to-Commissioner emails suggests that, in fact, that Commissioners did what they said they had done, and had collected relevant materials.  Plaintiff essentially argues that these individuals cannot be trusted, and that they must have been exchanging unreported communications.  But another, simpler explanation is that the

---

the contrary, that Commissioner Gardner provided these materials after realizing that they were overlooked demonstrates the care and good faith that one would expect of the Commission.

Commission was still in the early stages of its work during this time period, and so there was not much email exchanged between Commissioners.

### 2. There is no basis for extending the index to documents created before May 11, 2017.

There is no basis for extending the index to cover documents created before May 11, 2017, the date the Commission was created by Executive Order No. 13,799, as plaintiff wishes. FACA section 10(b) states that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents *which were made available to or prepared for or by each advisory committee* shall be available for public inspection and copying . . . ." 5 U.S.C. app 2 § 10(b). This provision does not contemplate that materials must be released publicly *before* the Commission was even created. Instead, the statute discusses materials "which were made available to or prepared for or by each advisory committee." A document or other record cannot be made "available to" a committee that does not exist, nor can something be "prepared for or by" an entity which has not been constituted. Plaintiff provides no explanation rooted in either the language of section 10(b) or the case law interpretation of that provision for how documents created before an advisory committee was established can be subject to disclosure under FACA. Instead, plaintiff seems to contemplate a wide-ranging FOIA-type request for all documents relating to the Commission. But FACA section 10(b) does not provide such relief, and therefore, plaintiff's request is improper.

### 3. Defendants properly searched for and categorized text messages.

Defendants have properly searched for and categorized text messages. As discussed earlier, Mr. Kossack provided Commissioners with instructions to "search all email accounts that you have used to send or receive Commission-related e-mails, including personal accounts, as well as *other communications, such as text messages*, Facebook, and other social media

accounts." Fourth Kossack Decl. at Ex. A; *see also id.* ¶ 5.  Each Commissioner who received

these instructions "executed the certification attesting to have completed the search." *Id.* ¶ 9.

This search comported with the Court's instruction that "Defendants' search for relevant

materials must be . . . broad, and should include all mediums through which Commission

members have engaged in work for the Commission."  Order (Aug. 30, 2017) at 2.

Only Vice Chair Kobach reported any text messages, which were not provided to the

Commission but are listed in the index with the description "administrative topics like

scheduling."  Index No. 508; *see also* Fourth Kossack Decl. ¶ 9.  Plaintiff objects to this

treatment, stating that defendants "should obtain and review . . . [these] text messages to

determine whether they are merely administrative."  Pl.'s Mot. Compel at 8.  But defendants

appropriately relied on Vice Chair Kobach's representations, and plaintiff offers no basis for

concluding that FACA requires more.

Plaintiff also speculates that other text messages must exist because Vice Chair Kobach

"has been texting with other Commissioners on an individual basis, or perhaps on a group chain

that discusses the Commission's substantive work."  Pl.'s Mot. Compel at 8-9.  Plaintiff puts

forward no facts in support of this claim.  Indeed, no other Commissioner reported that he or she

had relevant text messages, supporting the opposite conclusion that no such substantive

conversations occurred via text message.  *See* Fourth Kossack Decl. ¶ 9; *cf., e.g.*, *Competitive

Enter. Inst. v. NASA*, 989 F. Supp. 2d 74, 88 (D.D.C. 2013) (holding, in the FOIA context, that

"[m]ere speculation that as yet uncovered documents may exist does not undermine the finding

that the agency conducted a reasonable search for them.") (quoting *SafeCard Servs., Inc.*, 926

F.2d at 1201).

Plaintiff "further notes that neither Kossack's Fourth Declaration nor the *Vaughn* index addresses whether Commissioners have exchanged messages through encrypted applications such as Signal or Confide, which reportedly are used by many within the White House." Pl.'s Mot. Compel at 9. The Commissioners were specifically instructed to "collect all e-mails and other written communications," Fourth Kossack Decl. at Ex. A., which would include other electronic media or applications. Plaintiff's speculation that Commissioners were using these tools is just that – unsupported speculation – and is therefore improper.

## CONCLUSION

For the aforementioned reasons, plaintiff's motion should be denied, and this Court should set a schedule for the briefing of defendants' forthcoming motion to dismiss.

Dated:  October 27, 2017                       Respectfully submitted,

                                               CHAD A. READLER
                                               Acting Assistant Attorney General
                                               Civil Division

                                               BRETT A. SHUMATE
                                               Deputy Assistant Attorney General

                                               ELIZABETH J. SHAPIRO
                                               Deputy Director

                                               */s/Carol Federighi*
                                               CAROL FEDERIGHI
                                               Senior Trial Counsel
                                               KRISTINA A. WOLFE
                                               JOSEPH E. BORSON
                                               Trial Attorneys
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               P.O. Box 883
                                               Washington, DC 20044
                                               Phone: (202) 514-1903
                                               Email: carol.federighi@usdoj.gov

                                               *Counsel for Defendants*